194 So.2d 762 (1967)
Edward R. EVANS, Individually and on Behalf of His Minor Children, Michael Evans and Veronica Evans
v.
ALLSTATE INSURANCE COMPANY, Mrs. Catholine Gardache, Elmore and/or Elmere Gardache, Oakie Rosie Riley, Wife of/and Mr. Riley, and Earl Leon Riley, and Frank Carr.
No. 6862.
Court of Appeal of Louisiana, First Circuit.
January 30, 1967.
*764 Harold J. Lamy, of Dodd, Hirsch, Barker & Meunier, New Orleans, for appellant.
James H. Drury, of Drury & Lozes, Curtis R. Boisfontaine, of Sessions, Fishman, Rosenson & Snellings, New Orleans, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
An automobile accident occurred on September 4, 1963 at approximately 11:00 p. m. on U.S. Highway 90, approximately three-quarters of a mile west of intersection of U.S. Highway 90 with U.S. Highway 190 in the Parish of St. Tammany. Apparently, a 1960 Ford Panel Truck being driven by Earl Leon Riley, one of the defendants herein, and occupied by Mrs. Catholine Gardache, also a defendant herein, had a blow out of the left front tire causing the vehicle to veer to the left and into the path of on-coming traffic, resulting in a collision with a 1957 Ford Sedan, owned and operated by the plaintiff, Edward R. Evans. As a result of the collision the Evans car was knocked out of control, ran off the highway, over an embankment and into a deep canal. Mr. Evans' 25 year old wife, Sandra Lou Evans, their three year old daughter, Valerie Ann Evans were killed. Mr. Evans and two other minor children sustained various personal injuries.
The circumstances leading up to the accident are as follows:
Earl Leon Riley, 16 years of age and an emancipated minor as a result of his marriage, entered into an agreement with Mrs. Gardache to sell certain furniture on the condition that he bring this furniture to Mrs. Gardache's camp in Waveland, Mississippi. There was an agreement that Mrs. Gardache would pay a certain amount over and above the purchase price to apply to his expenses in moving the furniture and appliances.
In compliance with this agreement the furniture was loaded on the truck and the journey to Waveland, Mississippi was begun. Shortly thereafter, however, Riley's truck had a flat tire on the left front side and Riley had the tire repaired. After the tire was repaired Riley and Mrs. Gardache continued along only to have another flat on the same tire. The tire was again repaired. Soon after leaving the Chef Menteur highway and while traveling along U.S. Highway 90 the same left front tire on the Riley truck blew out, causing the truck to veer to the left of the highway. The tire was completely disintegrated according to the testimony and it was apparent that a new tire would be needed. Riley claims to have gone to the Powers Junction Service Station at the intersection of Highway 11 and Highway 90 and purchased a tire from that service station. However, Riley could not remember the name of anyone he dealt with, had no receipt for the tire and could not remember how much he paid for the tire. The owner and manager of the service station testified that they knew nothing about this sale, and that they did not have road service at the time of the accident. At any rate, the tire was placed on the truck and the trip was continued. After proceeding several miles and reaching a point on U.S. Highway 90 somewhere between Chef Menteur and Rigolets bridges, the alleged new tire went flat. Riley then caught a ride to a nearby Shell Service Station just beyond the intersection of U.S. Highway 90 and U.S. Highway 190 in order to get the tire repaired. The operator of the service *765 station testified that he advised Riley that the tire was dry rotted and defective and should not be used. He refused to repair the tire himself. At this point, Riley fixed the tire himself, brought it back to the truck and placed it back on the truck. The trip was again continued for a distance of several miles, the second blow out occurred causing the truck to crash into the on-coming Evans car, resulting in the injuries and deaths which are the basis of this suit.
Suit was brought against Earl Leon Riley, Mrs. Catholine Gardache, and her husband Elmore Gardache, and their insurer, Allstate Insurance Company. The suit against Mr. and Mrs. Gardache and their insurer, were based on three alternative theories:
1. That Earl Leon Riley was the agent of Mrs. Gardache at the time of the accident; or
2. That Mrs. Gardache and Earl Leon Riley were on a joint mission at the time of the accident; or
3. Mrs. Gardache was independently negligent in that she employed an obviously irresponsible young man to haul her furniture with an obviously defective truck.
In addition, Robert Powers, doing business as Powers Junction Service Station and his insurer, Employers Liability Assurance Corporation were sued for selling a defective tire to Earl Leon Riley. On the trial thereof judgment was rendered in favor of the plaintiff, Edward R. Evans, individually in the sum of $28,969.80 and against Earl Leon Riley, together with legal interest thereon from date of Judicial demand and for all costs. There was also judgment in favor of Edward R. Evans, on behalf of the minor child, Michael Evans and against Earl Leon Riley in the sum of $7,875.00, and on behalf of the minor child, Veronica Evans in the sum of $11,250.00. Judgment was rendered in favor of Allstate Insurance Company, Mrs. Catholine Gardache, Elmore Gardache, Oakie Rosie Riley, Mr. Riley, Robert Powers and Employers Liability Assurance Corporation dismissing plaintiff's suit against them and at plaintiff's costs. The plaintiff appeals herein from this judgment. Upon appeal of the case attorneys for the plaintiff assigned three errors.
1. "The court failed to find Mrs. Gardache legally responsible for the accident in question under one of the theories proposed by plaintiff and that Allstate Insurance Company was equally liable under its policy of insurance covering her for the use of the non-owned automobile for which she was legally responsible."
2. "In failing to find that Powers Junction Service Station sold an obviously defective tire to Earl Leon Riley, for which it and its insurer, Employers Liability Assurance Corporation, was liable for judgment to the plaintiffs herein."
3. "That the award for the loss of plaintiff's wife should be increased to $20,000.00 and that the award to the plaintiff for the loss of his three year old daughter should be increased to $12,000.00."
The opinion of this court will, therefore, be limited to a consideration of these three alleged errors.
The first question to be decided is whether or not Mrs. Gardache was "using" the vehicle which was owned by Riley. Supporting their contention that Mrs. Gardache was using the vehicle, the attorneys for the plaintiff cite several cases to the effect that the word "use" is much broader and is not limited to physical operation of the auto. Two of the cases cited from which the attorneys for the plaintiff quote at great length are Bolton v. North River Insurance Company, La.App., 102 So.2d 554 and Liberty Mutual Insurance Company v. Steenberg Construction Company, 8 Cir., *766 225 F.2d 294. In each of these cases extremely broad interpretation to the term "use" or "using" was applied and the insurers of the vehicles in question were held liable under the omnibus clause provisions of the policies for the acts of third parties which could in no way be held as the mechanical operation of the vehicles.
In the present case the injuries sued upon are not as a result of the operation or use of the insured automobile. Liability in this case is predicated upon a provision of the policy that the damages must "arise out of the ownership, maintenance or use of the owned or non-owned automobile". The policy covering the automobile of Mrs. Gardache is her husbands. The cases cited by the attorneys for the plaintiff are readily distinguishable from the case at bar in that it is apparent that a much broader interpretation of the word "use" or "using" may be justified when the damages sued upon are the result of a use of the insured vehicle. The Appellant also cites the cases of Garvey v. Great Atlantic and Pacific Tea Company, La.App., 125 So.2d 634 as authority for a non-operator being found to be "using" the vehicle. Here a grocery boy placing a bag in a vehicle was found to be using the vehicle. However, the judgment of the court here was based upon specific policy language which stated that the term "use" was to include the loading and unloading of the vehicle.
More in line with the facts that we have before us is the case of Wall v. Windmann, La.App., 142 So.2d 537 cited by the appellee. Here it was found that a mechanic engaged in the starting of a truck he did not own was not "using" the truck under the provisions of the mechanic's own automobile liability policy. Even stronger authority cited by the appellee is Chase v. Dunbar, La.App., 185 So.2d 563, which held that no use existed where the alleged third party user was actually manipulating the controls of a non-owned automobile.
In the opinion of this court to find a "use" in this case would be to extend coverage of this policy far beyond the limits contemplated by the parties.
The next question for consideration is whether or not a joint venture existed between Mrs. Gardache and Mr. Riley. It is the appellant's contention that there was a joint venture with both parties having a distinct interest in the trip. The appellant also contends that Mrs. Gardache had a right to direct and control the course of the trip, thereby supplying the requisites provided by the Louisiana law to constitute a joint venture. The record, however, does not bear this out.
The appellant cites considerable authority, all with varying degrees of direction and control, and all finding that the parties involved were engaged in the joint venture and thereby denying recovery on the basis of contributory negligence. These cases, however, are easily distinguishable from the present case, since they all involve the imputation of contributory negligence of the driver to the owner-passenger. The case at bar, however, is an attempt to impute the primary negligence of the driver to the non-owner passenger. The appellant is unable to cite any authority which imputes the primary negligence between joint ventures where the owner is not present in the car as a guest passenger. The apparent theory behind the cases which impute the contributory negligence of the driver to the owner-passenger is that since the owner is a guest passenger theoretically retains some right of control over the automobile and when some common interest is found the criteria for a joint venture is met. However, in a case where the guest passenger is not the owner it becomes incumbent upon the plaintiff to prove not only a joint interest, but also to prove the existence of an equal right on the part of the guest passenger over the direction and control of the automobile in order to establish the existence of a joint venture.
*767 The plaintiff-appellant then alleged in the alternative that if there was no joint venture the relationship between Mrs. Gardache and Earl Riley was that of principal and agent. In answer to this contention the appellee correctly recites the case of Moffet v. Koch, 106 La. 371-375, 31 So. 40 which lays down the formula for determining whether the relationship is that of master-servant or independent contractor. Here the Louisiana Supreme Court stated, "The simple test is * * * who has the general control over the work? Who has the right to direct what should be done and how to do it? And, if the person employed reserves this power to himself, his relation to his employer is independent, and he is a contractor, but, if it is reserved to the employer, or his agents, the relationship is that of master and servant." This being the case the question is simply a matter of proof as to whether sufficient power is reserved in the hands of Mrs. Gardache to establish a master-servant relationship. The burden of proving this naturally would lie on the appellant. In the opinion of this court the appellant has failed to bear this burden.
The only testimony in the record which in any way indicates that Mrs. Gardache had any control whatsoever over Riley was to the effect that Mrs. Gardache was to show Riley how to get to her house, once they had gotten to the Gulf Coast. However, there is no testimony to the effect that Riley would not have been able to get there on his own. Accordingly there was no testimony to the effect that Mrs. Gardache exercised any power as to how Riley was to operate the vehicle or conduct the operations in any manner or form. It may well be that in fact there was a principal-agent or master servant relationship established, but upon the face of the record there is no testimony which would establish this relationship and we cannot make any assumptions of fact which may establish this.
The next contention of the appellant is that even conceding Riley to be an independent contractor, Mrs. Gardache was negligent in using a vehicle driven by an irresponsible young man and is thereby liable, this being an exception to the general rule that the employer is not liable for the negligence of the contractor. It is well established that there may be independent negligence on the part of the person hiring an irresponsible independent contractor. The only question now to be decided is whether as a matter of fact Mrs. Gardache was negligent in hiring Riley.
The first point brought out by the appellant in attempting to establish this independent negligence is Riley's young age. However, Riley was at the time practically 17 years old and a licensed driver under the laws of the State of Louisiana and while he may in fact have been young and irresponsible we cannot hold Mrs. Gardache to a higher degree of insight than the Legislature of the State of Louisiana which sets the minimum age limit for driving at 15.
The next point made by the appellant is that Mrs. Gardache was negligent by not ascertaining the condition of the vehicle and was further negligent in allowing the journey to continue with obviously defective tires. As to the previous condition of the truck it would be unjust to hold Mrs. Gardache responsible as she obviously had no prior knowledge of the condition, neither can she be held responsible for the fact that there were a series of flats prior to the accident. It must be remembered that a short time prior to the accident a blow-out occurred and as a result Riley went to purchase a new tire. Riley returned with a tire and the tire was placed on the truck. As far as Mrs. Gardache knew at this time Riley had placed a new tire on the truck and the dangerously defective tire was no longer of any importance. While it is conceded that another flat occurred subsequent to the placing of the new tire on the truck this can hardly serve as notice to Mrs. Gardache that there was a defective tire now on the truck.
*768 It must be pointed out again that as far as Mrs. Gardache was concerned there was a new tire upon the truck and while it may be rare for a tire to go flat so soon after being placed in use such is not beyond the realm of possibility. Also Riley took the tire to be repaired and apparently had done so. At any rate, Mrs. Gardache was unfamiliar with such circumstances and certainly could not be held responsible for not making an inspection of the tire either when it was placed new upon the truck or after it had been repaired immediately before the accident. Even if she had done so it is highly unlikely that she could have detected any defect which would reasonably have been foreseen to cause such an accident.
The next question to be decided is whether Robert Powers, doing business as Powers Junction Service Station and Employers Liability Assurance Corporation are responsible for selling a defective tire to Earl Leon Riley. The Trial Judge refused to believe that Earl Leon Riley did in fact purchase the tire from Powers Junction Service Station and therefore rendered judgment in favor of Powers Junction Service Station.
The question to be decided is solely one of facts and is therefore best determined by the Trial Judge who is able to observe the demeanor of the witnesses. It is only when the Trial Judge has abused his much discretion that the Appellate Court will overturn a finding of fact. In our opinion the Trial Judge did not abuse his discretion here in this matter.
This brings us to the question of quantum of damages. In view of the obvious youth and inexperience of the defendant, Riley, and his inability to respond in judgment together with all the facts therein, we find the amount awarded to be adequate. We do not feel that the Trial Judge abused his discretion.
For the foregoing reasons, the judgment of the Lower Court is hereby affirmed.
Affirmed.