Mr. and Mrs. Walter W. CECIL, Individually and as Mother and Father of Marcus H. Cecil, Deceased, Petitioners,

v.

David Brian HARDIN, Respondent.

Supreme Court of Tennessee.

Dec. 29, 1978.

J. B. Cobb, Hayden Lait, Memphis, for petitioners.

Robert M. Fargarson, Memphis, for respondent.

## OPINION

COOPER, Justice.

This is an action for the wrongful death of Marcus Cecil, who was killed when he was struck by a car in which the respondent, David Hardin, was a passenger. At the close of the proof, the trial judge directed a verdict for Hardin. The Court of Appeals upheld his ruling. We affirm.

For the most part, the evidence is not in dispute. Joe David Edwards, age 20, and Hardin, age 21, were friends of long standing. One Saturday evening, they met at the apartment of a mutual acquaintance in Memphis. While there, both had several beers, and it appears that Hardin smoked some marijuana. In addition, Edwards took two pills of a controlled substance,[1] though this was not known to Hardin until later in the evening. Edwards and Hardin left the apartment together, in Edwards' car, with plans to go to a party together later that night. The details of their further activities that night, in so far as they are material to the issues before this court, will be dealt with presently. At this point, it will suffice to say that the two spent the rest of the night driving about the city. During the course of their travels, they bought and consumed more beer, and Hardin took several pills of methaqualine. By late in the evening, by their own admission, both were under the influence of alcohol

---

1. While its precise nature does not appear in the record before us, it appears to have been a barbiturate.

and drugs. At about 1:00 a. m., the car, with Edwards driving, struck Marcus Cecil as he rode his bicycle along the side of the road. Although both youths knew that they had collided with something, by their account neither realized that it was a person and they did not stop to render aid. They were arrested by police some time later, after two other accidents, these relatively minor.

Both Hardin and Edwards were sued for Cecil's wrongful death, and the two were tried jointly. The jury returned a verdict against Edwards, which was not appealed. However, at the close of the proof, the trial judge directed a verdict for Hardin, holding that there was no proof either of any negligence on his part that was a proximate cause of Cecil's death, or of any relationship between Hardin and Edwards such that the latter's negligence might be imputed to Hardin. It is the propriety of that action that is before this court.

On review of the grant of a directed verdict on motion of a defendant, it is not the office of an appellate court to weigh the evidence. Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced. *Keller v. East Tennessee Production Credit*, 501 S.W.2d 810 (Tenn.App. 1973).

In the instant case, the petitioners insist that there is material evidence from which a jury could find both that Hardin was guilty of negligence, independent of the acts of Edwards, that was a proximate cause of Cecil's death, and that Hardin was jointly liable with Edwards for damages caused by Edwards' negligent operation of the automobile. The basis of this latter insistence is two-fold: First, the petitioners insist that Hardin and Edwards were engaged in a joint venture, and, secondly, they argue that Hardin aided and abetted Edwards in a series of unlawful acts that resulted in the accident.

With respect to the contention that the jury could have found that Hardin was guilty of independent acts of negligence, the petitioners have advanced several theories. First, they have argued that Hardin was negligent in permitting Edwards to drive, knowing him to be under the influence of either drugs or alcohol. We find no merit in this argument. A passenger has no duty to the public to control or to attempt to control the operation of a vehicle where he has no right to do so, either as a result of his relationship to it or to the driver. 6 Blashfield, Automobile Law & Practice, § 251.6 et .seq. (3d ed. 1966). *See, e. g., Coffman v. Kennedy*, 74 Cal.App.3d 28, 141 Cal.Rptr. 267 (1977); *Sloan v. Flack*, 150 So.2d 646 (La.App.1963); *Mims v. Coleman*, 248 S.C. 235, 149 S.E.2d 623 (1966). *Cf.* Restatement (Second) of Torts, § 315. Here, there is no evidence from which the jury might have found that Hardin had a right to control the operation of the automobile, as opposed to the mere "right" to make suggestions, in which Edwards might or might not acquiesce. *Compare Malbrough v. Davidson*, 219 So.2d 313 (La.App.1969); *Galvan v. Sisk*, 526 S.W.2d 717 (Tex.Civ.App.1975).

The petitioners have also claimed that liability could have been imposed on Hardin as a result of his failure to stop and give assistance to Cecil, after the latter had been struck by the automobile. In this, the petitioners are also in error. A passenger is under no legal duty to stop and give assistance to a person injured by the car in which he is riding, unless the passenger's conduct caused the accident or there is some special relationship either between the passenger and the driver that would make the passenger jointly responsible with the driver for the accident, or between the passenger and the injured party independently giving rise to such a duty to aid. *See* Restatement (Second) of Torts, § 322; Annot., 33 A.L. R.3d 301; 57 Am.Jur.2d Negligence § 41. The petitioners have made no allegation of any special relationship between Cecil and

Hardin. Thus, in order to recover on this theory, the petitioners must show that Hardin was responsible for the accident itself, directly or as a result of his relationship with Edwards. As may be seen from the balance of this discussion, the petitioners have failed to do either.

█ Implicit in the petitioners' argument is yet a third theory of liability, that Hardin was negligent in providing beer for Edwards, knowing both that he was under the influence of alcohol or drugs, and that he would be driving. However, even assuming that the petitioners are correct, and that the jury could have found that Hardin's actions in this respect were negligent,[2] we do not believe that it could have imposed liability on him based on that finding. At common law, an individual who furnished alcohol to another was not liable for any damages resulting from the other's intoxication, even if those damages were foreseeable, in part because the other's acceptance of the intoxicants was considered an independent intervening cause, cutting off any liability. *Tarwater v. Atlantic Co.*, 176 Tenn. 510, 144 S.W.2d 746 (1940). *See also* Annot., 75 A.L.R.2d 821; 45 Am.Jur.2d Intoxicating Liquors § 554. Courts of this state have modified the common law rule in the past, holding, for instance, that liability might be imposed in certain circumstances on commercial purveyors of liquor who provided it to an intoxicated customer. *See, e. g., Mitchell v. Ketner*, 54 Tenn.App. 656, 393 S.W.2d 755 (1964).[3] However, we have found no decision, and none has been cited to us, in which such liability has been imposed on those who provided intoxicating beverages in a social context, as Hardin did here, nor do we believe that we should set such a precedent. So great a departure from settled law, with its myriad implications for casual social intercourse, is better left to the legislature. *See Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969); *Miller v. Owens-Illinois Glass Co.*, 48 Ill.App.2d 412, 199 N.E.2d 300 (1964); *Edgar v. Kajet*, 84 Misc.2d 100, 375 N.Y.S.2d 548 (1975), aff'd 55 A.D.2d 597, 389 N.Y. S.2d 631 (1976); *Garcia v. Hargrove*, 46 Wis.2d 724, 176 N.W.2d 566 (1970).

█ As we mentioned previously, the petitioners have contended as well that there is evidence from which the jury could have found that Hardin was responsible for the various negligent and unlawful acts committed by Edwards, which, for the purposes of this discussion, may be assumed to have been proximate causes of Cecil's death. To establish this joint responsibility and thus liability, the petitioners have argued first that there was evidence from which the jury could have found that Hardin and Edwards were engaged in a joint venture. We disagree. The elements that need to be shown to establish a joint venture among several parties are a common purpose, some manner of agreement among them, and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality. *Spencer Kellogg & Sons, Inc. v. Lobban*, 204 Tenn. 79, 315 S.W.2d 514 (1958); *Evans v. Allstate Insurance Co.*, 194 So.2d 762 (La.App.1967); *Manley v. Horton*, 414 S.W.2d 254 (Mo. 1967). These elements have not been shown here. In particular, as we noted above, there was no evidence from which the jury might have found that Hardin had a right to control the operation of the vehicle. Furthermore, the evidence shows that

2. However, the evidence that might support a finding that any alcohol consumed by Edwards contributed to his inability to competently control the automobile is exceptionally weak. At the time of his arrest, Edwards had a blood alcohol level of .01 percent, far below that which would imply that the alcohol, of itself, had any effect on his ability to drive. *Cf.* T.C.A. § 59–1047. While there was lay testimony, from Edwards himself, that alcohol tended to increase the effect of the drug that he had

taken, there is no evidence as to whether the nature and extent of that increase was such as to materially affect Edwards' condition.

3. Numerous other jurisdictions have departed from the common law rule to various degrees, either by statute or by judicial decision. *See, e. g., Lewis v. State*, 256 N.W.2d 181 (Iowa 1977); *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973); *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959).

the two youths were associating together casually, for social purposes only. Liability predicated on a joint venture theory of mutual responsibility is not imposed in instances in which the parties join together purely for pleasure, but is reserved, rather, for cases in which the parties associate for business, or expense sharing, or some comparable arrangement. *See*, e. g., *Easter v. McNabb,* 97 Idaho 180, 541 P.2d 604 (1975); *Hall v. Blackham,* 18 Utah 2d 164, 417 P.2d 664 (1966). *Cf. Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32 (1926).

 Finally, the petitioners have argued that under the evidence presented at trial Hardin could be held liable for Edwards' acts because he "aided and abetted" Edwards' unlawful activities. Again, we must disagree. This theory of recovery is based on the civil liability imposed at common law of those who aid others in unlawful acts, and is distinct from that which imposes liability on the basis that the parties participated in a joint venture.[4] Under it, an individual who participates in an unlawful activity in concert with others is liable for any damages resulting from acts committed by his compatriots in the course of that activity. *Huckeby v. Spangler,* 521 S.W.2d 568 (Tenn.1975). To impose such liability, the jury must find that the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts. Restatement of Torts, § 876(b). *See, e. g., Cobb v. Indian Springs, Inc.,* 258 Ark. 9, 522 S.W.2d 383 (1975); *American Family Mutual Insurance Co. v. Grim,* 201 Kan. 340, 440 P.2d 621 (1968); *Nelson v. Nason,* 343 Mass. 220, 177 N.E.2d 887 (1961); *Lemons v. Kelly,* 239 Or. 354, 397 P.2d 784 (1964). We do not believe that the jury had before it evidence from which it could have found that Hardin gave such "substantial assistance and encouragement" to Edwards in the several unlawful acts committed by him over the course of the evening, which acts the jury undeniably

could have found were material factors in causing Cecil's death. *Compare Haddock v. Stewart,* 232 Md. 139, 192 A.2d 105 (1963). First, with respect to the drugs illegally taken by Edwards, there is no indication in the record that Hardin was involved in this crime in any way. The evidence is undisputed that Edwards took all the drugs that he consumed that evening prior to leaving with Hardin, and that Hardin did not even learn that Edwards had taken any drugs until some time after the fact. The second offense committed by Edwards in which Hardin arguably was involved was that of driving under the influence of alcohol or drugs, this involvement being based both on Hardin's failure to prevent Edwards from driving, knowing him to be intoxicated, and the fact that he provided some of the beer that Edwards consumed. This, of itself, is an insufficient basis on which to impose liability. Hardin did no more than acquiesce in Edwards' determination to drive his own car. As we have already noted, there is, at present, no legal duty on the part of a social guest to police a driver's sobriety, and we do not think it practical for us to impose one. As for the argument that would hold Hardin liable under this theory because he provided beer for Edwards, we disagree for the same reasons that we refused to hold that Hardin was independently liable for the presumed negligence of the same acts, and explained more fully at that point. To impose liability on this basis would greatly expand the liability of those who provide alcohol to others in a social context, an expansion that we believe would be inappropriate. Finally, we do not feel that Hardin may be held liable, on the basis of the record before us, for Edwards' failure to stop after the accident and give aid to Cecil. *Cf.* T.C.A. § 59–1003. Again, as we noted previously, there is no evidence in the record that Hardin had the right to direct the operation of the vehicle. Neither is there any indication that he made any attempt to keep Edwards from stopping. The record shows at most

---

4. It is distinct, also, from the criminal responsibility imposed by statute. *See* T.C.A. §§ 59–1016; *State v. Morris,* 224 Tenn. 437, 456 S.W.2d 840 (1970); *Williams v. State,* 209 Tenn. 208, 352 S.W.2d 230 (1961).

that Hardin acquiesced in Edwards' determination not to stop. While this may be morally indefensible, it falls far short of the "substantial assistance and encouragement" of Edwards' illegal acts that the petitioners must show to justify the imposition of liability on Hardin under this theory.

As there was no material evidence upon which the jury might have based a verdict against Hardin under any of the theories advanced by the petitioners, the trial judge was correct to direct a verdict as he did. The result reached in both the trial court and the Court of Appeals is affirmed. Costs will be taxed to the petitioners.

FONES and HARBISON, JJ., concur.

HENRY, C. J., and BROCK, J., dissent.

HENRY, Chief Justice, dissenting.

I respectfully dissent.

In order to demonstrate the enormity of the tragedy directly resulting from the concerted criminal conduct and unlawful activities of Edwards and Hardin, I quote the graphic description contained in the opinion of the Court of Appeals:

The deceased was riding his bicycle on Walnut Grove Road, evidently near the curb, when he was struck by the Edwards vehicle, which according to a witness, was being driven in an erratic manner. The head of the deceased struck the right corner of the windshield, which collision drove the deceased's head through the windshield, severed the great artery in the throat and sprayed blood and left flesh clinging to the interior of the vehicle and on the clothing of the defendants. The bicycle was dragged beneath the car for over 100 feet. Edwards drove on up to a stop light and stopped and then continued on for some miles just driving around the neighborhood, stopping at a girlfriend's house, and then continuing on until he went over onto the wrong side of the road, crashed into a utility pole and was apprehended by the police. Both Hardin and Edwards testified they were not aware that they had hit someone, but in their stupor were only aware that the windshield had somehow broken and wondered how it was going to be paid for.

There can be no legitimate basis for reaching any conclusion but that these two defendants acted in concert and with a common and fixed intent to violate the criminal laws of the State. They combined and confederated on an expedition of drinking, drugging and driving, culminating in the wrongful death of an innocent eighteen year old boy. They were joint tortfeasors in every sense of the word and I am unable to separate their conduct, one from the other. The fortuitous fact that Edwards was driving is irrelevant, given the circumstances of this case.

Further, I view *Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32 (1925) as being irrelevant to this controversy. I have no quarrel with the *Schwartz* holding with respect to the general requirement that in order to make out a case of joint enterprise each of the parties "must have authority to control the means or agencies employed to execute the common purpose." 152 Tenn. at 590, 280 S.W. at 33. I must confess, however, that I am more comfortable with this theory in a suit between two culprits (as in *Schwartz*) than in the instant suit between the representatives of the deceased victim and two characters engaged in a binge of drunken and drugged revelry.

Further, I find it incongruous to speak in terms of *control* in a situation where its very absence was the cause of the injury. How much control was exercised in a case where a boy on a bicycle was struck with such force that his head was driven through the windshield, the bicycle dragged more than a hundred feet with the driver and passenger so stupified that they were unaware that they had hit anyone or anything?

In my view this is not a joint enterprise situation and the criteria of such an activity are not applicable.

The rules relating to joint tortfeasors are discussed in detail in 74 Am.Jur.2d, *Torts,* § 61 *et seq.* In the opening section the general rule is set forth:

[T]he rule of joint and several liability of tortfeasors prevails where the tortfeasors act in concert or unity of action. The rule applies to tortfeasors who intentionally unite in the wrongful act, or who are present and assist or participate therein, actively and with common intent, so that the injury results from the joint wrongful act of the wrongdoers.

This treatise accurately reflects Tennessee decisional law. In *Hale v. City of Knoxville,* 189 Tenn. 491, 226 S.W.2d 265 (1950) this Court, speaking through Justice Gailor, said:

The Tennessee definition of joint tortfeasors, which has been frequently quoted and often applied is: "When a tort is committed by two or more persons jointly, by force directly applied, or *in the pursuit of a common purpose or design, or by concert, or in the advancement of a common interest,* or as the result and effect of joint concurrent negligence, there is no doubt but that all the tort-feasors are jointly and severally liable for all the damages done the injured party, and that these damages may be recovered in joint or several actions, although the wrongful conduct or negligence of some may have contributed less than that of others to the injury done." *Swain v. Tenn. Copper Co.,* 111 Tenn. 430, 438, 78 S.W. 93, 94. (Emphasis supplied) 189 Tenn. at 502 226 S.W.2d at 269–70.

In *Blalock v. Temple,* 38 Tenn.App. 463, 276 S.W.2d 493 (1955) the Court of Appeals correctly and succinctly stated the rule:

. . . that where two or more persons engage in an unlawful act and one of them commits a serious, civil injury upon a person not engaged therein, all are equally liable for damages to the injured party. 276 S.W.2d at 496.

In my view this case is controlled by our recent decision in *Huckeby v. Spangler,* 521 S.W.2d 568 (Tenn.1975), which the majority cites for the proposition that:

[A]n individual who participates in an unlawful activity in concert with others is liable for any damages resulting from acts committed by his compatriots in the course of that activity.

And then in one fell swoop attempts to devitalize the holding by saying that:

[t]o impose such liability, the jury must find that the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts.

Assuming *arguendo* that this language may be read into, or fairly inferred, from our holding in *Huckeby,* the result reached by the majority totally ignores the fact that at all times Hardin was a planner, a participant, and a principal with his cohort, Edwards, in a night featuring dangerous, deadly and unlawful conduct. He therefore "gave substantial assistance or encouragement" justifying the imposition of liability under this revised interpretation of *Huckeby.*

In *Huckeby* we held simply and pointedly that:

There is no question but that when two or more persons engage in an unlawful act and one of them commits a serious civil injury upon a person *not engaged therein,* all are equally liable for damages to the injured party. 521 S.W.2d at 573.

It is the phrase *not engaged therein* that differentiates this factual situation from that of *Schwartz v. Johnson* and its progeny. In this case, had Hardin, a participant, sued Edwards, a coparticipant, he would have been barred at the threshold by *Schwartz* in view of his participation. But not so where the suing plaintiff was an innocent bystander.

The majority does not even allude to the celebrated case of *Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815 (1959), wherein this Court sustained a conviction for involuntary manslaughter against a "guest passenger" who was riding while drunk. The facts are very similar to the instant case. There the Court held:

[W]hen one sits by the side of another and permits him without protest to operate the vehicle on a highway in a state of intoxication . . . the one sitting by

is as guilty as the man at the wheel. 205 Tenn. at 169, 325 S.W.2d at 821.

Chief Justice Neil, in a concurring opinion, brought the whole problem into focus:

[L]iability of one who occupies an automobile with a drunken driver is dependent upon the degree of cooperation between them. The criminal negligence of the drunken driver is imputable to drunken occupants of the car when the evidence shows some degree of *concert of action.* (Emphasis supplied) 205 Tenn. at 172, 325 S.W.2d at 822.

Under *Eager,* Hardin is liable to prosecution and subject to conviction for at least involuntary manslaughter. To hold that one guilty of criminal misconduct is free of culpable negligence is contrary to reason and is an obvious distortion.

I would reverse and remand for trial.

I am authorized to state that Mr. Justice BROCK joins in this dissent.