# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 6, 2010 Session

## E & J CONSTRUCTION COMPANY v.
## LIBERTY BUILDING SYSTEMS, INC.

**Appeal from the Circuit Court for Campbell County**
**No. 12757     John D. McAfee, Judge**

---

**No. E2009-01403-COA-R3-CV - FILED AUGUST 27, 2010**

---

E & J Construction Company ("Plaintiff") purchased a metal building from Liberty Building Systems, Inc. ("Defendant"). The metal building was purchased by Plaintiff for one of its customers, Camel Manufacturing Company ("Camel"). Plaintiff constructed the metal building for Camel and connected it to an existing building. Almost from the outset, there was a problem with leaking. Plaintiff sued Defendant raising various claims including, among others, breach of contract. After the Trial Court granted Defendant's motion for partial summary judgment, the case proceeded to trial on the few remaining claims. At the conclusion of Plaintiff's proof, the Trial Court granted Defendant's motion for directed verdict. Plaintiff appeals. We reverse the grant of a directed verdict on Plaintiff's breach of contract claim and remand for further proceedings. The judgment of the Trial Court otherwise is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit**
**Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the Appellant, E & J Construction Company.

James G. O'Kane, Knoxville, Tennessee, for the Appellee, Liberty Building Systems, Inc.

# OPINION

## Background

In May of 2005, Plaintiff filed a complaint asserting several causes of action against Defendant arising from the purchase of an allegedly defective metal building. According to the complaint:

> In late 2003, [Plaintiff] issued a purchase order to [Defendant] for a metal building which was designed and engineered by [Defendant]. The purchase price for this building was $102,811.90. [Plaintiff] subsequently erected this building for its customer, [Camel Manufacturing Company ("Camel")] at Camel's facility in Campbell County, Tennessee.

> At the time that this building began to be erected by [Plaintiff], [Plaintiff's] personnel observed that the gutter for this large building appeared to be too small. [Plaintiff] had purchased other metal buildings from [Defendant] and recognized that this guttering appeared to be under-sized. Prior to the building being erected, [Plaintiff] notified [Defendant's personnel] and [Plaintiff] was assured that the guttering was correctly sized.

> The building was erected according to [Defendant's] specifications and in accordance with [Defendant's] drawings. [Defendant's personnel] inspected the building and certified that the building was erected correctly.

> Shortly after the building was erected, leaks began to occur as a result of the guttering being undersized. [Plaintiff] had been concerned from the outset about this guttering and its fears came true. [Defendant] was contacted and [Plaintiff] was instructed to do various things to try to attempt to resolve the guttering problem. [Plaintiff] utilized its personnel and materials in attempting to repair the gutter, when [Defendant], in fact, knew that the gutter was mis-sized and that the replacement of the gutter was the only solution to this problem.

[Plaintiff] expended approximately $4,200.00 in labor and materials in trying to follow [Defendant's] instructions with regard to these attempted repairs.

[Plaintiff] had enjoyed an excellent relationship with Camel . . . , a business that is growing quickly in Campbell County. In fact, [Plaintiff] had been involved in some construction of 8 buildings at Camel's facility at the time that this particular building was erected. Unfortunately, the leaking problems impacted [Plaintiff's] relationship with Camel, making it impossible for [Plaintiff] to bid on other Camel projects until this problem was solved.

Plaintiff went on to allege that Camel threatened to sue Plaintiff if the leaks were not repaired. According to Plaintiff, in order to avoid litigation with its client, Plaintiff designed a new guttering system and incurred expenses in the amount of $17,852.38 in the fabrication and installation of the new gutter. Plaintiff further claimed that its business relationship with Camel has been ruined. Plaintiff sued Defendant for: (1) breach of contract; (2) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq*.; (3) interference with business relationships; and (4) intentional and/or negligent misrepresentation.

Defendant answered the complaint and generally denied any liability to Plaintiff. Defendant admitted that Plaintiff purchased the metal building in question from Defendant, but denied that the guttering was too small or otherwise improperly sized. Defendant averred that Plaintiff negligently constructed the building and that the Tennessee Consumer Protection Act claim was barred by the one year statute of limitations.

In August of 2007, Defendant filed a motion for summary judgment and/or motion for partial summary judgment. Defendant claimed it was entitled to summary judgment on Plaintiff's claims because the undisputed material facts established that the gutter was of a proper size. Alternatively, Defendant argued that Plaintiff's Consumer Protection Act claim was barred by the one year statute of limitations. Attached to Defendant's motion was the affidavit of David Ryan Hill ("Hill"). Hill is employed by Defendant as an engineering manager. Hill earned a bachelor of science degree in engineering in 1996 and has been a licensed engineer since 2002. Hill has continuously worked in the metal building business. According to Hill:

At the request of [Defendant's attorney], I have reviewed the drawings of the metal buildings which [Defendant] provided

to [Plaintiff], and I have also reviewed a drawing with dimensions, which illustrates the relationship of the existing buildings to the new metal buildings that were constructed on the Camel Manufacturing Company premises. I have also reviewed the purchase order documents for this project. Finally, I have been asked to assume that the valley gutter that was placed between the existing building and the newly manufactured Liberty buildings had six equally spaced down spouts as described by [Plaintiff] in its purchase order and the testimony of [Jack Heatherly, a licensed contractor and Plaintiff's director of field operations]. . . .

Based on the information I reviewed and my knowledge and expertise as a structural engineer, experienced in the design and manufacture of metal buildings, I have been asked to determine whether or not in my opinion the valley gutter that was provided to [Plaintiff] by [Defendant] was correctly sized or whether it was too small as alleged by [Plaintiff]. I have completed an analysis, and it is my opinion within a reasonable degree of engineering certainty that the valley gutter manufactured by [Defendant] and provided to [Plaintiff] was properly sized, and was at least one inch deeper than necessary. In addition thereto, it is my opinion within a reasonable degree of engineering certainty that any roof leaks that occurred near the valley gutter which is at issue in this case were not caused by an undersized or missized valley gutter. In my opinion, as set forth above, this valley gutter was of proper size for the application, and [Plaintiff's] allegation that it was too small is incorrect. (original paragraph numbering omitted)

Plaintiff responded by filing the affidavit of Jack Heatherly ("Heatherly"), whose wife is the owner of Plaintiff. Although Heatherly is not an engineer, he is a field supervisor for Plaintiff. Heatherly stated that Plaintiff ordered a series of three metal buildings that were to be connected to Camel's existing building. When the components were uncrated, Heatherly was concerned that the guttering was too small and contacted Ben Barcroft, a district manager for Defendant. Barcroft supposedly contacted one of Defendant's engineers and was told that the guttering was the proper size. Barcroft relayed this information to Heatherly. Relying on that representation, Heatherly proceeded to install the gutter and complete the metal buildings. Heatherly then stated:

-4-

Had I known at that time that the gutter was incorrectly sized, I would not have continued building the building. [Defendant] sold [Plaintiff] a pre-engineered building which was represented to be correctly designed and to comply with all standards applicable in the State of Tennessee and I relied on that representation.

After the building was completed during the summer of 2004, there were problems with leaks in the building. I went back and checked the screws and the gutter. After the problem continued, I contacted Ben Barcroft and a series of recommendations were made by [Defendant] for me to do various things to the building which I did. None of those things worked. It was not until the summer of 2004 when the building was completed that I knew about the valley gutter overflowing.

It was not until August 2 and 3, 2004, that Daniel Moore visited the building in question at Camel. . . . I was working on another job at the time and my son Jack Heatherly, Jr., was present at Camel and went up on the building with Daniel Moore. Daniel Moore stated at that time that the gutter was too small and that was reported to me by Jack Heatherly, Jr. That was the first time that anyone from [Defendant] admitted that the gutter was too small.

After that date, I continued to be called to Camel Manufacturing Company whenever it rained because the building leaked at the location of the valley gutter. I continued to try to deal with this problem and my wife and I continued to keep [Defendant] advised that the problem was not solved.

It was not until November, 2004, that Daniel Moore came back to the site. At that time, he guaranteed that the work he performed would stop the leaking. His work did not stop the leaking and I continued to get complaints from Camel and continued to contact [Defendant] regarding these problems.

*   *   *

I have stood on the roof of this building in question at Camel during a rainstorm in 2004. I observed the gutter overflowing. I checked the downspouts and none were blocked. When I went inside the building, I observed leaks from the valley gutter. The size of the gutter caused the gutter to overflow and, in turn, caused leaks in the building. (original paragraph numbering omitted)

Heatherly went on to explain that prior to this situation involving the leaking metal building, Camel was a very good customer of Plaintiff. After the incident involving the leaking metal building, Plaintiff no longer was asked to perform any work for Camel.

Plaintiff also filed the affidavit of Louis Cortina ("Cortina") an engineer who has been licensed since 1987. According to Cortina:

I have reviewed the calculations by Ryan Hill and in my professional opinion, the gutter originally provided by [Defendant] is too small. A gutter with the dimensions suggested by Ryan Hill would likely overfill and cause leaks in the building.

The design by [Defendant] and the dimensions of the gutter suggested by Mr. Hill leave very little or no additional capacity for blocked downspouts, heavy downpours, or debris in the gutter. Based on my past experience with regard to the design of gutters and roof[s], additional capacity is necessary and as a result, I would not agree with Mr. Hill's recommendation.

A gutter in the dimension of 10″ deep by 12″ wide would be my recommendation and it is my opinion that a gutter 11½″ wide by 6″ deep is inadequate. . . . (original paragraph numbering omitted)

The contract between Plaintiff and Defendant contained the following provision:

Warranty: Liberty Building Systems, Inc., warrants all materials included in our building systems package for a period of one year from date of shipment. All materials must be properly

-6-

installed and erected in a timely fashion upon receipt of shipment. Prolonged storage or exposure to the elements or hazardous environments will void this warranty. Any damaged materials discovered while unloading the shipment must be reported and signed off by the delivery driver for validation. All shortages and concealed damage must be reported within 10 working days of receipt of shipment.

A hearing was conducted on Defendant's motion for summary judgment/motion for partial summary judgment. Following the hearing, the Trial Court entered an order stating as follows:

> This cause came on to be heard . . . on defendant's Motion for Summary Judgment and Motion for Partial Summary Judgment. The parties were represented by counsel and presented their argument to the court. The court having considered defendant's Motion for Partial Summary Judgment, plaintiff's response thereto, the supporting evidence of record, and having heard the argument and representations of counsel, the court made its ruling from the bench with respect to defendant's Motion for Partial Summary Judgment.[1] The court found that defendant's Motion for Partial Summary Judgment seeking dismissal of plaintiff's claims pursuant to the Tennessee Consumer Protection Act that defendant engaged in unfair or deceptive acts or practices pursuant to Tenn. Code Ann. § 47-18-104 should be granted. Having found that plaintiff's Tennessee Consumer Protection Act claims of unfair or deceptive acts or practices should be dismissed, the court ruled that defendant's motion to dismiss the Tennessee Consumer Protection Act claims pursuant to the one-year statute of limitations is moot. The court further found that defendant's Motion for Partial Summary Judgment seeking dismissal of plaintiff's claim for tortious interference with a business relationship should be granted. The court further found that defendant's Motion for Partial Summary Judgment seeking dismissal of plaintiff's claim for lost profits should be granted. Finally, the court denied at

---

[1] For obvious reasons, we should have been provided a transcript from this hearing, but the record contains no such transcript. Thus, we cannot ascertain what "representations" were made to the Trial Court and by whom.

this time defendant's Motion for Partial Summary Judgment seeking dismissal of plaintiff's intentional/negligent misrepresentation claims, and further withheld ruling on plaintiff's Motion for Summary Judgment seeking dismissal of plaintiff's suit, pending submission by defendant of a supplement to the Motion for Summary Judgment on or before Monday, March 10, 2008, or defendant's announcement of a withdrawal of the Motion for Summary Judgment. . . . (footnote added)

Following entry of the order partially granting Defendant's motion for summary judgment, Defendant withdrew its motion on the remaining claims and this case proceeded to trial. For the most part and except as discussed below, the testimony of Plaintiff's witnesses at trial was consistent with that set forth in their respective affidavits.

At the close of Plaintiff's proof, Defendant moved for and the Trial Court granted a motion for a directed verdict. According to the Trial Court:

After the plaintiff rested, the jury was excused and defendant moved for a directed verdict in its favor. After hearing arguments of counsel and considering the evidence and record as a whole, the court found that defendant's Motion for a Directed Verdict in its favor with respect to plaintiff's claim of negligent or intentional misrepresentation and punitive damages is well-taken, because the plaintiff presented no competent proof of a negligent or intentional misrepresentation that would entitle the plaintiff to recover compensatory or punitive damages; and the court further found that defendant's Motion for a Directed Verdict with respect to the remaining issue of a breach of contract and breach of the implied warranty of fitness for a particular purpose was well-taken, because there was no competent expert testimony presented that the gutter at issue was not fit for a particular purpose or that defendant breached its contract with the plaintiff. . . .

After entry of the directed verdict for Defendant, Plaintiff filed a motion for a new trial. In this motion, Plaintiff claimed that not only was it pursuing a claim for breach of an implied warranty of fitness for a particular purpose, it also was seeking relief for breach of an implied warranty of merchantability. In addition, Plaintiff asserted that there was sufficient proof to withstand a motion for directed verdict as to whether Defendant breached

the contract and implied warranties, as well as whether Defendant had committed negligent and/or intentional misrepresentations. The Trial Court denied the motion, and Plaintiff appeals challenging both the granting of Defendant's motion for partial summary judgment as well as the granting of Defendant's motion for directed verdict following the close of Plaintiff's proof at trial.

## Discussion

We first discuss whether the Trial Court properly granted Defendant's motion for partial summary judgment. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food*

*Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

We begin by addressing the grant of Defendant's motion for summary judgment with regard to Plaintiff's Tennessee Consumer Protection Act ("TCPA") claim. Plaintiff cites very little evidence and no law whatsoever in the argument section of its brief addressing the grant of Defendant's motion for partial summary judgment. Plaintiff's entire argument as to the dismissal of the TCPA claim comprises one paragraph in the argument section of its brief. Plaintiff cites Heatherly's affidavit twice and improperly attempts to rely on trial testimony pertaining to Plaintiff's misrepresentation claim.[2] According to Plaintiff, Jack Heatherly's statements in his affidavit: (1) that he was advised by Defendant that the guttering was the correct size; and (2) that Heatherly would not have continued building the building had he known the gutter was not the correct size, are sufficient to create a fact issue on the TCPA claim. As noted, Plaintiff cites absolutely no law supporting his claim that these two facts, standing alone, are sufficient to create a genuine issue of material fact as to its TCPA claim. Plaintiff does not even discuss what is required to properly set forth a TCPA claim. Plaintiff even fails to cite to the TCPA.

---

[2] Plaintiff cites trial testimony when discussing the misrepresentation claim. Testimony at trial is irrelevant when ascertaining whether the pre-trial motion for partial summary judgment should have been granted.

The entire discussion in Plaintiff's argument section of its brief addressing the grant of summary judgment on its claim for interference with business relationship is as follows:

> There was also a fact issue with regard to the claim for interference with the business relationship with Camel Manufacturing. The Affidavit and deposition testimony showed that Liberty contacted representatives of Camel Manufacturing directly and placed blame on the Plaintiff for the problems with the gutter system. Affidavit of Jack Heatherly ¶ 21.

Again, Plaintiff cites no law setting forth the elements necessary to state a claim for intentional interference with a business relationship or any law supporting its argument that the two alleged facts set forth in Heatherly's affidavit, standing alone, are sufficient to withstand a properly supported motion for summary judgment on such a claim. The same can be said for Plaintiff's argument as to the grant of summary judgment for lost business profits.

> In *Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000) we observed:
>
> Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. *See State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993). . . . As noted in *England v. Burns Stone Company, Inc.*, 874 S.W.2d 32, 35 (Tenn. Ct. App. 1993), parties cannot expect this court to do its work for them.

*Bean*, 40 S.W.3d at 55-56.

Because Plaintiff has failed to cite any authority whatsoever with respect to its argument that the Trial Court improperly granted Defendant's motion for partial summary judgment as to the various claims at issue in that motion, we find that Plaintiff has waived these issues on appeal. Accordingly, we affirm the Trial Court's grant of partial summary judgment to Defendant.

The next issues surround the Trial Court's granting of a directed verdict to Defendant. With respect to the Trial Court's granting of Defendant's motion for directed verdict, our standard of review is different from that related to a summary judgment. In *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365 (Tenn. 2006), our Supreme Court set forth the standard of review with regard to directed verdicts, stating:

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id*. The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).

*Johnson*, 205 S.W.3d at 370.

Plaintiff claims Defendant violated both the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. Neither of these warranty claims was specifically asserted in the complaint, and we were unable to find in the record an amended complaint setting forth these claims. Plaintiff does not direct us to anywhere in the record where breach of either implied warranty actually was pled. As to the implied warranty of merchantability, the Trial Court obviously did not believe that Plaintiff was pursuing this un-pled claim. The pleadings support this conclusion. We hold that a claim for breach of the implied warranty of merchantability never was properly raised.

As to the implied warranty of fitness for a particular purpose, at trial Plaintiff's expert, Louis Cortina, expressly testified that the gutter at issue was fit for its particular purpose. While Cortina testified that the gutter would have been more effective had it been

deeper, he, nevertheless, acknowledged to the Trial Court that the gutter was built according to industry guidelines and was fit for its particular purpose. Specifically, Cortina stated:

> THE COURT: Do you agree or disagree, was that gutter fit for the particular purpose and that purpose would be to handle the water volume coming off that roof line for a 50-year rain. . . .
>
> THE WITNESS: Based on the volume, it meets the minimum guidelines.
>
> THE COURT: Which would be fit for the particular purpose in which it was designed.
>
> THE WITNESS: For handling quantity of water, yes.

On appeal, Plaintiff argues that we should simply ignore the testimony of its own expert. This, we cannot do. We affirm the Trial Court's judgment granting a directed verdict to Defendant on Plaintiff's claim that Defendant violated the implied warranty of fitness for a particular purpose.[3]

Next we address the Trial Court's grant of a directed verdict for Defendant on Plaintiff's claims for negligent and intentional misrepresentation. In *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997), the Supreme Court discussed the essential elements of a negligent misrepresentation claim as follows:

> Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." Section 552 provides, in pertinent part, as follows:
>
> > (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails

---

[3] Due to our resolution of this issue, we pretermit Defendant's argument that Plaintiff never pled a violation of the implied warranty of fitness for a particular purpose.

to exercise reasonable care or competence in obtaining or communicating the information. . . .

*Id.* at 427.

The only alleged "misrepresentation" of Defendant at issue on appeal occurred when Plaintiff was told that the gutter was the correct size after concerns were initially raised by Mr. Heatherly. However, there was no proof offered by Plaintiff that Defendant or one of its representatives failed to exercise reasonable care when informing Plaintiff that the gutter was the correct size. Even Plaintiff's expert agreed that the gutter met minimum industry standards and was fit for its particular purpose. Accordingly, the Trial Court correctly granted Defendant's motion for directed verdict as to the negligent and intentional misrepresentation claims.

The final issue is whether the Trial Court correctly granted Defendant's motion for a directed verdict as to the breach of contract claim. As set forth previously, the contract between the parties contained the following express warranty:

> Warranty: Liberty Building Systems, Inc., warrants all materials included in our building systems package for a period of one year from date of shipment. All materials must be properly installed and erected in a timely fashion upon receipt of shipment. Prolonged storage or exposure to the elements or hazardous environments will void this warranty. Any damaged materials discovered while unloading the shipment must be reported and signed off by the delivery driver for validation. All shortages and concealed damage must be reported within 10 working days of receipt of shipment.

At trial, Heatherly testified that he installed the metal building according to Defendant's specifications and that it, nevertheless, repeatedly leaked. The leaks began well before one year had elapsed from the date of shipment. Heatherly's attempted repairs were unable to stop the leak, and eventually a new and deeper gutter was installed.

As noted previously, when reviewing the grant of a motion for directed verdict, we "must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence." *Johnson*, 205 S.W.3d at 370. When viewing the evidence in this light, we believe Plaintiff did present sufficient evidence to withstand Defendant's motion for a directed verdict on Plaintiff's breach of contract claim asserting that Defendant violated the express warranty

-14-

contained in the contract. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff purchased the building from Defendant; Defendant instructed Plaintiff how to install the building; Plaintiff installed the building as directed by Defendant; and the building leaked despite being installed as directed by Defendant. In short, construing this evidence in Plaintiff's favor, the building bought from Defendant leaked despite the fact that it was installed as directed by Defendant. We believe this evidence to be sufficient such that doubt exists as to the conclusions to be drawn from this evidence. We reverse the judgment of the Trial Court on this sole issue. Any remaining issues are pretermitted.

## Conclusion

The judgment of the Trial Court granting Defendant's motion for a directed verdict on Plaintiff's breach of contract claim is reversed. In all other respects, the judgment of the Trial Court is affirmed. This case is remanded to the Campbell County Circuit Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, E & J Construction Company, and its surety, and one-half to the Appellee, Liberty Building Systems, Inc., for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

-15-