Spencer Kellogg & Sons, Inc.

*v.*

L. P. Lobban.

(*Nashville,* December Term, 1957.)

Opinion filed July 11, 1958.

80

LEMLE & KELLEHER, New Orleans, La., BURCH, PORTER, JOHNSON & BROWN, Memphis, for appellant.

EMMETT W. BRADEN and J. E. McCADDEN, ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, of counsel, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

In this case the appellant Spencer Kellogg & Sons, Inc., a New York corporation, sued the appellee, L. P. Lobban, for 10 tank cars of soybean oil in the sum of $75,497.80, which was sold by the appellant to a Louisiana partnership in which it is alleged that the appellee, Lobban, is a partner. There is no claim made in the bill that Lobban received any part of the proceeds of the contract, other than a broker's commission.

Lobban, as an individual, is engaged in the soybean oil brokerage business in Memphis, Tennessee, under the trade name of "Pat Lobban & Company". On January 11, 1957, he issued the usual and ordinary broker's slip confirming a sale by the appellant, in Buffalo, New York, to Red River Cotton Oil Company, Inc., of Alexandria, Louisiana, for 10 tank cars of crude soybean oil, Lobban signing the broker's slip "as brokers only." Appellant, in Buffalo, New York, prepared on its printed form, and signed a contract for such 10 carloads of oil and forwarded it to Alexandria, Louisiana, where it was signed by the buyer "Red River Cotton Oil Company, Inc., by J. E. Byram, Jr., Executive Vice President." This is the contract sued upon in the original bill.

The bill alleges among other things that Lobban over a period of at least seven years had been a member of this Louisiana partnership; that he, as a broker, had been dealing with the appellant; that appellant did not know he was a partner, and that this partnership dealt with many others in addition to the appellant.

It is specifically alleged in the original bill:

"* * * that on September 30, 1950 an account was set up on the books of said corporation in the name of defendant, and thereafter and until May 8, 1957, the date of the last entry thereon, the transactions of said trading partnership were reflected in said account; * * *''.

The bill as originally filed, in addition to the sum set forth in the first paragraph hereof, also sued for certain refining costs which were later struck from the bill on or about the time the defendant Lobban plead thereto.

Lobban, the defendant below, appellee here, filed a motion to dismiss. As a basis for this motion he plead the law of Louisiana, as he had a right to do under sec. 24-610, T.C.A. The effect of this motion is that under the Louisiana law a partner may not be sued until the partnership obligation has been established against the alleged partnership; that before a partner, as an individual, can become liable this partnership liability must be fixed as an obligation. The Chancellor rendered a long memorandum opinion in which he sustained the motion to dismiss and treated it as a demurrer on the theory that the law of Louisiana controlled; that it was substantive law rather than procedural law; and since the partnership had not been sued and its liability fixed that a suit

against an individual partner could not be maintained in Tennessee.

Subsequent to the filing of this memorandum opinion by the Chancellor, the complainant, appellant here, was allowed to file an amended original bill. This amended original bill was filed ''for purposes of clarity in presentation.'' In this amended original bill a great many allegations are made in reference to the dealing of these parties and it is sought by this amended original bill to shift the matter from that of a partnership, as alleged in the original bill, to a joint venture. Yet even with this amended bill and the many averments that are made therein the conclusion is inescapable that what is here sued on is as is set forth in the original bill as heretofore set out. The record does not show the comments, if any, made by the Chancellor on this amended original bill other than his final conclusion of treating the motion to dismiss as a demurrer and sustaining it and dismissing the action.

The Courts of Louisiana more than a century ago had this to say in reference to a partnership of that State: The Court in *Smith v. McMicken,* 3 La.Ann. 319, at pages 321, 322, said:

''The partnership once formed and put into action, becomes in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes.

''* * * the partners are not the owners of the partnership property. The idea being thus recognized by a fiction of law, is the owner; it has a right to control and administer the property, to enable it to fulfill its legal duties and obligations; and the respective parties, who

associated themselves for the purpose of participating in the profits which may accrue, are not the owners of the property itself, but of the residuum which may be left from the entire partnership property, after the obligations of the partnership are discharged."

This quotation and law as set forth therein has been followed from that time up to the present and is particularly quoted and adopted by the Chief Justice of Louisiana as late as 1956 in the case of *Trappey v. Lumbermen's Mutual Casualty Co.*, 229 La. 632, 86 So.2d 515. Many cases are there cited by the Chief Justice as authority for this statement. We have read many of them and are satisfied that that is the law of Louisiana in reference to a partnership. Though of course Louisiana is concededly the only State in the Union having this partnership relationship.

This "* * * liability does not become enforceable against the individuals who compose the partnership, separate and apart from the firm, until it has been dissolved." *Hayes Machinery Co. v. Eastham*, 147 La. 347, 84 So. 898, 900, or, as otherwise stated in the opinion,

"Until the debt is established contradictorily with the partnership, so long as it exists, there is no debt within the meaning of article 2872 of the Civil Code, which can be enforced against the individual partner." [229 La. 632, 86 So. 517.]

And further, as said by the Chief Justice in the Trappey case:

"It is only '* * * when the partnership has been dissolved, (in which case) it ceases to exist as a separate entity, and the liability of the partners becomes fixed,' " Citing *Hayes Machinery Co. v. Eastham, supra.*

■■ This last stated proposition was again restated citing many Louisiana cases therefor in the case of *Harrison v. Frye,* La.App., 46 So.2d 382, 384. It was there again recognized that an individual member of a partnership could not be sued or made a party defendant because the partnership in Louisiana was a legal entity, separate and distinct from the persons who composed it and that the members of this partnership do not owe any debt during the existence of the partnership unless the partnership itself was joined.

■ This same case (*Harrison v. Frye, supra*) sets forth the various ways under the Louisiana Code wherein a partnership is terminated. Among others is the death of one of the partners. The Court though says, not about death but about when a partnership is terminated:

"* * * the mere termination of a partnership does not have the effect, *ipso facto,* of extinguishing the concern as a legal entity. It remains as such for the purpose of liquidation and until its affairs are completely wound up. *Duvic v. Home Finance Service,* La.App., 23 So.2d 790; *Guess & Albin v. Ham,* La.App., 183 So. 61."

We cite and quote this proposition, as to the termination of a partnership, for the reason that herein it is alleged that the Louisiana partner Byram is dead. Thus it is very forcefully argued as a result thereof that the partnership had terminated. Thus it is said that it is not necessary, even under the Louisiana law, to make the partnership a party defendant but that the appellee, defendant below, may be sued individually because, it is said, that the partnership terminated upon the death of the other partner. We cannot agree to this because it

seems to us that common sense dictates the fact that until the affairs of this partnership are completely wound up it has not terminated. That is exactly what is held in the *Harrison v. Frye* case. This same reasoning, we think, would apply upon the death of a partner.

This same proposition was said in another way in the case of *Montague v. Weil & Bro.*, 30 La.Ann. 50:

"It is also true that a commercial partnership exists for the purpose of its liquidation, after it has been dissolved, and the former partners may be sued in the Court of the firm domicil on the liabilities of the firm, and in a late case this doctrine was extended so as to permit them to be brought in by attachment, if they were non-residents. *Lobdell v. Bushnell*, 24 La.Ann. 295."

The Supreme Court of Louisiana has decided very forcefully and very clearly that an individual partner may not be sued and is not liable for the debts and obligations until the partnership has been sued and remedies there exhausted. In the case of *Rheuark v. Terminal Mud & Chemical Co.*, 213 La. 732, 35 So.2d 592, 594, the Court had this to say:

"Commercial partners are bound in *solido* for the debts of the partnership in the sense that they and each of them may ultimately be required to pay the whole of its debts; yet such solidary obligation is not a primary one, and, until the debt is established contradictorily with the partnership, so long as it exists, there is no debt within the meaning of Article 2872 of the Civil Code which can be enforced against the individual partners, and the partnership is a necessary party to the

liquidation of such a claim. In other words, that liability does not become enforceable against the individual members who compose the commercial partnership separately and apart from the firm until it has been dissolved; so long as it continues, they must be sued through and with it.''

This rule was recognized as early as 1882 in the case of *Liverpool, Brazil & River Platte Nav. Co. v. Agar & Lelong,* C.C., 14 F. 615, 616. This Federal case has been cited and quoted from many times in the later Louisiana cases. In this case the Court there in describing and talking about a Louisiana partnership had this to say:

''* * * they, during the life of the partnership, cannot be charged individually except through partnership; that is, during the life of the partnership a partner is, like a corporator in a corporation, liable and made to respond individually only through a judgment against the intellectual being of which he is a component part.''

And thus under the Louisiana law the Chancellor reasoned if the indebtedness for which the defendant is sought to be held liable does not exist—that is, there is no indebtedness under the laws of Louisiana—unless and until the indebtedness is established against the partnership entity—it would seem, in the opinion of this Court, that the question now under discussion cannot be procedural.

■■■ Learned, intelligent, and interesting arguments were had at the Bar and are brought forth in the briefs as to whether or not the question here involved is procedural or is substantive law. Many years ago, this Court went

into this question at length in the case of *State for Use of Smith v. McConnell,* 156 Tenn. 523, 3 S.W.2d 161, and after quoting many authorities defined the term substantive law and procedural law. This is followed by a very comprehensive note on the question in 52 C.J.S. Law p. 1026. Among other things there said which might lead one to the conclusion that this is substantive law is this, it is "that part of the law which creates, defines, and regulates rights; that which creates duties, rights, and obligations; the law which relates to rights and duties which give rise to a cause of action; * * *". And from the authorities there cited and others as set forth procedural law is merely the machinery of carrying out a lawsuit.

■ Be this as it may we have concluded that a correct decision of the present lawsuit does not require our reaching a conclusion of whether or not the question here is substantive or procedural. The authors of Restatement Of The Law, Conflict Of Laws, at page 726 of this work, have this to say:

"If a judgment in an action provided by the law of the forum would impose on the defendant a more onerous duty than that imposed by the law of the state which created the right, or a substantially different duty, no action can be maintained."

The comment following this statement is:

"a. The rule stated in this Section indicates the purely practical character of the distinction between 'substance' and 'procedure'. It sometimes happens that to apply the procedure at the forum is to vary the obligation which the law of some other state has imposed upon the parties by reason of the ill adaptability of the

local judicial machinery to the peculiar character of the obligation. In such a case, a court at forum will deny access to its courts to the parties.''

To make the statement quoted is to answer it under the allegations and pleadings in the instant case. Here it is shown without a peradventure of a doubt that under the law of the place where this partnership existed; the place where the goods were to be shipped; the place that was billed for the goods; the place that signed the contract for the goods; the partnership that obligated itself to pay the complainant for these goods was in the State of Louisiana. It has been shown above what the obligations of partners in the State of Louisiana are.

Clearly the obligations and rights of the partners in the State where this partnership was created do not impose the same liability on the partnership as is imposed on the partnership in Tennessee. Here all partners are liable jointly and severally for everything chargeable to the partnership. Section 61-114, T.C.A. In Louisiana they are not thus liable until the partnership has been made a party and the partnership assets applied to the payment of the obligation, etc., as heretofore set out. Thus we have concluded that the Chancellor was clearly right under this reasoning to sustain the motion to dismiss and allow the parties first to go to the State of the creation of the partnership and establish its rights there. When a court of equity applies equity to equitable matters it acts in its discretion and unless there is a flagrant abuse of that discretion we should not disturb it. Thus we think that under this theory of the case and for this reason it is not necessary to determine whether the matter is procedural or substantive because the equities

and the rights of the parties clearly demand that the matter be fully disposed of in the State of the creation of this partnership before we exercise our rights, that is before an action is prosecuted against a citizen of this State.

About 100 years ago this Court, in effect, reached the same conclusion in *Talmadge v. North American Coal & Transportation Co.*, 40 Tenn. 337. The fifth headnote of this case is:

"Effect will be given to the laws of another State whenever the rights of a litigant before our tribunals are derived from, or are dependent on those laws; and when such recognition is not prejudicial to our interests or the rights of our citizens."

Of course this holding of our Court, in the Talmadge case, was based on Mr. Story's Conflict of Laws, Section 98, thereof. There is no absolute obligation of course that we as a matter of comity do comply with the laws of Louisiana under such circumstances, but where equity and justice seem to demand it the Courts of this State should do so. The same principle is again applied by the Courts of this State in *Robinson v. Queen,* 87 Tenn. 445, 11 S.W. 38, 3 L.R.A. 214, 10 Am.St.Rep. 690.

It seems to us that the Chancellor properly concluded that the partnership was a Louisiana commercial or trading partnership. In addition to the facts alleged in the bill heretofore pointed out the bill and the various exhibits thereto show an account with the defendant and these exhibits show the name of the corporation and its domicile in Louisiana; the purchases were made in the name of this Louisiana corporation and letters from the

defendant to this partnership were addressed to the corporation and to this alleged partner in Louisiana; the profits of the alleged partnership were paid to this defendant, appellee, by checks of the corporation drawn on a Louisiana bank, so it seems thus that the Chancellor was clearly justified in this conclusion in which we fully concur.

The defendant asserts in its brief that if satisfaction is not obtained by the complainant after the subjection of the partnership assets in Louisiana that then it would be entitled to bring its action in Tennessee against the defendant. The defendants say that they are supported in this by Louisiana law and the general principles of equity. This seems to us true.

We now come to the question of whether or not under the facts as alleged in the bill and the bill as amended set forth a joint venture. A very reasonable definition of this creature of the law is set forth in 30 Am.Jur., p. 939, Sec. 2, as follows:

"A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means em-

ployed to carry out the common purpose of the adventure.''

Many courts over the country have in the past years defined this term of a joint venture. It signifies to the judicial mind (a joint venture is a creation of the American Courts) that it is something more or less temporary—something gone into to more or less take a gamble on this proposition or that, or as they say sometimes, ''take a flier''. Clearly under the allegations of this bill what these parties did here was not such an undertaking. They for at least seven years or there about, had conducted this partnership. The Louisiana corporation with Byram as its president and a partner of Lobban had worked together in a partnership this way and divided what profits were made. This to our minds is a far cry from a joint venture. We think it is just what the bill alleges and the various exhibits show, a partnership over this period of time.

Lastly, it is sought to bring in the partnership into this action under our Section 20-223, T.C.A., providing for actions against unincorporated associations or organizations where they are residents or non-residents if they are performing acts or doing business in this State. It is to be remembered that the one who brought this action is a New York corporation suing a resident of the State who is a member of a Louisiana partnership upon a contract signed by the person bringing the suit in New York and accepted by the partnership in Louisiana. The allegation goes all through the pleadings here that the only thing that the defendant got out of that was his commission as a broker. This contract shows that he was to get a five per cent commission for selling this soybean oil to this concern. Before he would get anything

out of it the partnership would have to make a profit on it. What he did in this instance was as a broker; he sold it to a concern in which he was a partner. As far as we know there is no law to make the individual liable for acts of the kind. The New York people obviously checked on the credit rating, etc., on people that they sold this soybean oil to and they reserve in their contract the right to withdraw any of these orders if they find the credit is not up to the standard that they desire. The contract also provides that it shall be construed according to the New York law.

This Code Section relied upon is contained in the same chapter along with the substituted service of process statute when foreigners or non-residents are using our highways. The same principles that are back of why a police statute of the kind is constitutional in the highway statute, which immediately follows this statute in the Code, is the principle that is back of the reasoning of this statute. This is the apparent conclusion of the Court of Appeals with reference to the statute in the case of *McDaniel v. Textile Workers Union of America,* 36 Tenn. App. 236, 254 S.W.2d 1. We think the statute an excellent one and obviously it is passed for the benefit of our citizens to protect the citizens of this State when some unincorporated concern of the kind is covered by the statute and comes from out of the State and takes advantage of one of the citizens of our State. When they are doing business here then this right of process or right of action to make them a party applies. Under the facts as heretofore detailed in this much too long opinion, we do not think that this appellant brings itself within the statute.

We have not taken up each individual case cited by the parties herein but we have read and considered every case as well as making a rather extensive independent investigation on the question. After having done this we have concluded, for the reasons herein stated, that the decree of the Chancellor must be affirmed.

PREWITT, JUSTICE, not participating.