Ray ROBERTSON and Jim
Stockton, Appellants,

v.

James E. LYONS and William George, Individually and d/b/a Lyons & George Cotton Company, Appellees.

Court of Appeals of Tennessee, Western Section.

March 2, 1977.

Certiorari Denied by Supreme Court July 5, 1977.

J. Kimbrough Johnson, Thomason, Crawford & Hendrix, Memphis, for appellants.

W. Lee Whitman, Whitman, Liss & Moore, Memphis, for appellees.

MATHERNE, Judge.

The plaintiffs, farmers and residents of the State of Missouri, sue to recover damages sustained due to the breach of alleged contracts they entered into with the defendants whereby the defendants agreed to purchase the plaintiffs' 1974 cotton crops for the price of 65 cents per pound.

The trial judge, sitting without a jury, held for the defendants and dismissed the plaintiffs' lawsuit. The plaintiffs appeal, claiming error in the entry of judgment for the defendants.

## I.

The plaintiffs testified that in January, 1974 they were approached by Wade Lee who inquired of them whether they planned to sell their 1974 cotton crop. The plaintiffs told Wade Lee that they would sell the 1974 crops at the price of 65 cents per pound. Wade Lee produced printed form contracts and presented them to the plaintiffs. These contracts had only the name "Lyons & George Cotton Company" stamped on them in the blank which designated the "buyer" and at the end of the instrument where signatures were to be affixed. Wade Lee had written in another blank "Price of cotton at 65 cents pound." According to the plaintiffs, the foregoing constituted the only entries on the printed forms when they signed the contracts. The plaintiff Robertson agreed to sell all cotton raised on a certain 150 acres of land lying in Butler County, Missouri. The plaintiff Stockton agreed to sell all cotton produced on a certain 60 acres of land lying in Butler County, Missouri. The parties further agreed on the time within which the crop would be harvested (December 15, 1974) and the price reduction for failure to meet certain standards of measurement and for the presence of grass or bark.

Lee departed with the contracts as signed by the plaintiffs. According to the plaintiffs, he returned four days later and presented them with the contracts they had signed. The contracts now contained all the terms of the agreement plus the following handwritten statement: "$1.00 B/C commission to Wade Lee." The returned contracts had been signed "James E. Lyons, Agent Broker." The buyer under the contract was designated "Lyons & George Cotton Company, Agent Broker." Lee left with each plaintiff a copy of his respective contract and again departed. It is not clear how many copies of the contracts were signed by the parties, but apparently there were more than one because the signed copy presented by Lyons & George at the trial did not have the words "$1.00 B/C commission to Wade Lee" written thereon.

The testimony of the defendant Lyons varies somewhat on the question of which of the parties first signed the contract. Wade Lee did not testify, and there is no showing that he was more available to either party. As we view the lawsuit, it matters not which party signed the contracts first. There is no denial that the contracts were eventually signed by all parties and that the contracts contain the full

agreement made between Wade Lee and the plaintiffs. The lawsuit turns on the relationships between the parties to the contract and Wade Lee.

In October, 1974, the plaintiff Robertson telephoned Lyons at Memphis concerning the contract. The testimony conflicts as to what was said in that conversation. Robertson claims that Lyons assured him the contracts would be honored, even though at that time some buyers were repudiating similar contracts with other farmers. Lyons claims he told Robertson that he, Lyons, was not buying any cotton and that Robertson would have to contact Wade Lee.

On December 10, 1974, at Memphis, the plaintiffs tendered to Lyons & George the warehouse receipts and government green cards on each bale of cotton they had produced under the contracts. Lyons and George refused to honor the contracts. The plaintiffs sold the cotton and brought this lawsuit to recover as damages the difference between the contract price and what they received for the cotton.

Lyons and George insist that in these transactions Wade Lee was the agent of the plaintiffs-sellers. The defendants claim that Wade Lee, as the plaintiffs' agent, did not return their signed copy of the contract to them until late February or early March, 1974. Lyons testified that he told Wade Lee at that time that the contracts were not acceptable because the price of cotton had dropped substantially since Lyons and George signed the contracts in early January, 1974. He said that Wade Lee stated to him that he, Lee, would take care of the matter. Lyons stated that he thereupon filed his copy of the contracts and did not contact the plaintiffs-sellers.

Lyons and George further insist that Wade Lee changed the terms of the contracts by inserting in the copy left with the plaintiffs the words: "$1.00 B/C commission to Wade Lee." The plaintiffs admit that the words were written in the contracts when the contracts were returned to them. The plaintiffs said they agreed to pay that commission, even though it was not included in the oral contract at the time they signed the instruments.

Lyons and George also insist that their firm was acting as an agent broker and that the contracts were agreements for them to buy for some other person. They argue that, due to Lee's delay in returning the contracts, they could not broker the cotton because of the drop in price.

## II.

We fail to find the relationship of principal and agent between the plaintiffs-farmers and Wade Lee. Lee's past relationship with the plaintiffs consisted of two dealings with Robertson in the sale of his cotton since 1971. In 1972 Lee helped Stockton sell some cotton. There is no showing that the plaintiffs-farmers agreed for Lee to be their agent, and there is no showing that Lee held himself out to the defendants as the agent of the plaintiffs-farmers. Agency must be proved by the party asserting it. *Testerman v. Home Beneficial Life Ins. Co.* (Tenn.App.1974) 524 S.W.2d 664. The defendants have failed to establish that relationship between Wade Lee and the plaintiffs.

In his discovery deposition, the defendant Lyons stated that the relationship between the partnership of Lyons and George with Wade Lee was that of a joint account. This relationship was explained to be an agreement that Wade Lee would "(s)plit with us as partners 50–50 on the profit," and "(h)e would equally share in the loss." At the trial the defendant Lyons was very evasive concerning the joint venture with Wade Lee. He stated that he did not know what the relationship was between the Lyons and George partnership and Wade Lee. He did admit, however, that he had discussed with Wade Lee the proposition of buying cotton on joint account for December 1974 delivery. He further admitted that Wade Lee had contracts signed by Lyons for the purpose of buying cotton from various farmers.

The defendant George testified that Wade Lee misled Lyons and George and also misled the plaintiffs-farmers. This defendant said that Lyons agreed with Wade

Lee to contract cotton "on a commission basis and then, one time, it was on a joint account basis, and I really don't know what the true agreement was."

■ Contrary to the defendants' assertions, the evidence establishes that Lyons and George entered into a joint venture with Wade Lee to purchase cotton for December, 1974 delivery.

In *Spencer Kellogg & Sons, Inc. v. Lobban* (1958) 204 Tenn. 79, 315 S.W.2d 514, the Court recognized the definition of joint venture set out at 30 Am.Jur., p. 939, as follows:

"A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the understanding, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."

■ Each of the several joint venturers has the power to bind the others and to subject them to liability to third persons in matters which are strictly within the scope of the joint enterprise. 46 Am.Jur.2d *Joint Ventures* § 57 (1969).

■ The contracts' designation of Lyons & George Cotton Company as "Agent Broker" and Lyons's signature on the contracts as Agent Broker do not render the partnership an agent broker. The nature of the contract and the conduct of the parties in the particular transaction will govern their relationship regardless of words which might indicate the contrary. Compare *United States v. Boyd* (1962) 211 Tenn. 139, 363 S.W.2d 193, aff'd. 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713. The defendant George testified by discovery deposition as follows:

Q. Mr. George, if you were buying this cotton for somebody else, you would have had their name on the contract, right?

A. Yes.

\* \* \* \* \* \*

Q. If you were buying it for yourself, then you would put your name on the contract?

A. That is true.

\* \* \* \* \* \*

Q. The contracts by Stockton and Robinson (SIC), between Stockton and Robinson (SIC) and Lyons & George Cotton Company, indicate that Lyons & George Cotton Company was buying this cotton. Is that right?

A. That is true.

Q. Rather than your buying it for Dunavant or Hohenberg or somebody else?

A. True.

On the issue that the defendants were acting as agent brokers for a commission on sales effected by them for a third party, the defendant Lyons by discovery deposition testified as follows:

Q. And are these two documents (the contracts sued upon) your understanding of what the agreement was to be as far as selling the cotton for 65 cents?

A. Yes, what I thought it was to be, right.

Q. And you thought that you were to split with Wade Lee   .   .   .

A. Profit and/or loss.

Q.   .   .   .   profit and/or loss?

A. Right.

Q. If you were selling the cotton on a commission basis, there wouldn't be any loss, would there?

A. That's right.

Q. So what you really contemplated doing was having the cotton and then doing whatever was best at the time, right? If you could sell it for five cents a pound more, you would do it

that way; if you could make more by selling it on a commission basis, you would do it that way. Isn't that right?

A. That's right.

We conclude that the defendants, by their testimony, refute the argument that in the transactions under consideration they were acting as agent broker for a third party buyer of the cotton.

We conclude that Wade Lee had the authority to contract with the plaintiffs-farmers on behalf of his co-adventurers Lyons and George. If Wade Lee delayed the return of the contracts to Lyons and George, any loss sustained by that failure to act promptly in the best interest of the joint venture must be borne by the joint-adventurers. If Wade Lee inserted the term "$1.00 B/C commission to Wade Lee," that alteration of the contract after it had been signed by Lyons does not void the contract. The $1.00 per bale commission would have inured to the benefit of the joint-adventure.

It results that the plaintiffs are entitled to judgment in the amount of the differ-ence between the contract price and the price received for the cotton after the breach of the contract by the defendants. Based upon that measure of damages, the record reveals that the plaintiff Ray Robertson is entitled to judgment against the defendants in the amount of $5,618.82. The plaintiff Jim Stockton is entitled to judgment against the defendants in the amount of $4,272.26. Each judgment will bear interest at the rate of 8 per cent per annum from June 28, 1976, the date of entry of judgment in the trial court. T.C.A. §§ 47–14–101, 47–14–110. All costs in the trial court and in this Court are adjudged against the defendants. The judgment of the trial court is reversed and judgment shall be accordingly entered in this Court.

CARNEY, P. J., and NEARN, J., concur.