PROMISE DOE, JANE ROE, )
KIMBERLY C. and RUSS C., and )
SMALL WORLD MINISTRIES, )
INC., )
)
      Plaintiffs/Appellants, )     Appeal No.
)     01-A-01-9705-CV-00209
v. )
)     Davidson Circuit
DONALD SUNDQUIST, )     No. 97C-941
Governor of the State of Tennessee, )
in his official capacity, and )
GEORGE HATTAWAY, in his )
official capacity as the )
Commissioner of the Department of )
Children's Services for the )
State of Tennessee, )
)
      Defendants/Appellees. )
)

**FILED**

**August 24, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE WALTER C. KURTZ, JUDGE

LARRY L. CRAIN
KEVIN H. THERIOT
101 Westpark Drive, Suite 250
Brentwood, Tennessee 37027
     ATTORNEYS FOR PLAINTIFFS/APPELLANTS


JOHN KNOX WALKUP
Attorney General & Reporter

DIANNE STAMEY DYCUS
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, Tennessee 37243-0499
     ATTORNEYS FOR DEFENDANTS/APPELLEES

REVERSED AND REMANDED


WALTER W. BUSSART, SPECIAL JUDGE

# OPINION

On July 1, 1996, a new adoption law became effective in Tennessee. The issue before this court today is whether this Act, specifically the provisions which relate to the release of identifying information to adopted children over the age of twenty-one years concerning their surrendering birth parents, can stand under the Tennessee Constitution. The law operates prospectively as well as retro-spectively by releasing information thought to be qualifiedly confidential pursuant to the law in existence from 1951 to 1996. The plaintiffs are birth parents who have surrendered children under this former Tennessee statutory scheme,[1] adoptive parents who have adopted children under the prior law,[2] and a non-profit organization licensed by Tennessee as a child-placing agency[3] which has facilitated adoptions under the prior law. These Plaintiffs contend that the Act's retrospective effect of disclosing confidential information so as to impair prior vested rights is a clear violation of Article I, § 20 of the Tennessee Constitution. In addition, Plaintiffs claim that the Act results in the deprivation of the privacy rights and interests of Plaintiffs as guaranteed by the Tennessee Constitution.

This case has somewhat of a lengthy procedural history. Plaintiffs first filed their action in federal court, primarily basing their claim on the federal constitutional right to privacy; they were unsuccessful there. *Doe v. Sundquist*, 943 F. Supp. 886 (M.D.Tenn. 1996), *aff'd*, 106 F.3d 703 (6th Cir. 1997). Soon thereafter, Plaintiffs filed a complaint in the Circuit Court of Davidson County seeking injunctive relief against the enforcement of certain provisions of this law, specifically Section 36-1-127(c) of the Tennessee Code. Contemporaneously, Plaintiffs filed a motion for a temporary restraining order

---

[1]Jane Roe is a fifty-seven year old citizen and resident of Tennessee who surrendered her child for adoption in 1956 at the age of seventeen. Promise Doe is birth parent of an adopted child whom she surrendered in 1990 when Promise Doe was a teenager.

[2]Plaintiffs Kimberly C. and Russ. C. are husband and wife adoptive parents of two children, whom they adopted in the State of Tennessee.

[3]Small World Ministries, Inc. is a non-profit ministry licensed by the State of Tennessee as a child-placing agency.

pursuant to Tennessee Rule of Civil Procedure 65.03 which the trial court granted. Plaintiffs then filed a motion for temporary injunction pursuant to Tennessee Rule of Civil Procedure 65.04 which the trial court denied on May 2, 1997. Subsequently, this court granted Plaintiffs' Rule 10 application for extraordinary appeal as well as its motion for a stay of enforcement of the law pending the appeal. In a June 12, 1997 order, this court reserved ruling on the Rule 10 appeal "pending disposition by the [t]rial [c]ourt of the remaining issues in the case." However, on July 12, 1997, the trial court summarily granted Defendants' "motion to dismiss" pursuant to Tennessee Rule of Civil Procedure 12.02(6). In the appeal before us today, Plaintiffs challenge the lower court's granting of Defendants' 12.02(6) motion to dismiss as well as the May 2, 1997 denial of the Motion for Temporary Injunction.

Our review is governed by the procedural posture of this case which is the appeal of the trial court's grant of a Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted -- a motion which tests the legal sufficiency of the complaint and not the strength of a plaintiff's proof. *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997). A Rule 12.02(6) motion is therefore determined by an examination of the complaint alone. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (citing *Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990)). Regarding the 12.02(6) motion, our supreme court has stated as follows:

> Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997) (citing *Cook*, 878 S.W.2d at 938). Once a trial court's grant of a 12.02(6) motion has been appealed, the appellate court is required to "take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness." *Stein*, 945 S.W.2d at 716 (citing Tenn. R. App. P. 13(d) and *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn.1996)).

As stated, Plaintiffs initially sought relief in federal court where they were unsuccessful. While the federal appellate court's opinion did not address the state issues which have been raised in state court, the Sixth Circuit Court's opinion, along with that of the federal district court and the state circuit court, outline the law of adoption, both past and present, as follows:

> Under [section 36-1-127(c)(1) of the new adoption law] that was to go into effect July 1, 1996,
>> (A) All adoption records ... shall be made available to the following eligible persons: (I) An adopted person ... who is twenty-one (21) years of age or older ...; (ii) The legal representative of [such] a person ... (B) Information ... shall be released ... only to the parents, siblings, lineal descendants, or lineal ancestors, of the adopted person..., and only with the express written consent [of] the adopted person....
>
> *Id.* § 36-1-127(c)(1). The new law also provides for a "contact veto," under which a parent, sibling, spouse, lineal ancestor, or lineal descendant of an adopted person may register to prevent contact by the adopted person. *Id.* § 36-1-128. The contact veto can prohibit the adopted person from contacting any spouse, sibling, lineal descendant, or lineal ancestor of the person registering the veto. *Id.* § 36-1-130(a)(6)(A)(I). A violator of the contact veto provision is subject to civil and criminal liability. *Id.* § 36-1-132. Before disclosure of the identity of an adopted person's relatives is made, the state "shall conduct a diligent search" for the relatives to give them a chance to register for the veto. *Id.* § 36-1-131. In any event, the relatives of an adopted person can veto only contact, not disclosure of their identities.

*Doe v. Sundquist*, 106 F.3d at 704.[4] With greater elaboration on the pre-1996 adoption law, the federal district court summarized as follows:

> In 1949, the Tennessee General Assembly amended the state's adoption statutes and sealed records of the adopted child's "real name," any information obtained by the Tennessee Department of Public Welfare in its investigation of the adoption petition, and any reports filed by the Department with the court. 1949 Tenn. Pub. Acts, Chap. 127 §§ 3, 5, and 6. However, the law also stated that "upon petition by an adopted person who is over twenty one. . .," a judge could require the department to deliver "the secret records relating to said adopted persons" and the judge would open and inspect the record and release the adopted person any contents as he "in his sound discretion" deemed to be in the best interest of the adopted person and to the State of Tennessee. *Id.* § 8. In 1951, the statue was again amended, and the legislature placed all adoption

---

[4]Amici Curiae filed a "notice of legislative changes to Tennessee's Adoption Law" referring the court to changes occurring after the case at bar was heard in oral argument. These amendments have been duly considered by this court.

records under seal and forced adoptees seeking information to file a court order. 1951 Tenn. Pub. Acts, Chap. 202 § 24. Disclosure was predicated upon a court finding that it would be in the best interest of the adoptee or the public to have the information released. *Id.* at § 26.

*Doe v. Sundquist*, 943 F. Supp. at 889. In the opinion below which is on appeal today, the circuit court described the changes made in the law between 1951 and the present:

> In 1982, the legislature amended the law and provided that upon written request by an adopted person over the age of eighteen (18) years of age or an adoptive parent with a child under the age of eighteen (18) years of age, the Department of Human Services (DHS) shall provide all non-identifying information about the adopted person and the adopted person's biological family contained in the sealed adoption records. T.C.A. § 36-1-140 (1982) (repealed 1995 and transferred to T.C.A. § 36-1-133 in 1995). The amendment also provided that DHS may release only the following information: the date, time, height, and weight of the adopted person at birth; the age of the adopted person's biological parents at birth; the nationality, ethnic background, race, and religious preference of the biological parents; the educational level of the biological parents; a general physical description of the biological parents; any non-identifying information concerning other children of the biological parents at the time of the adopted person's birth; and any available health history of the biological parents and any other biological relatives. *Id.* The amendment provided that the release of information did not authorize or require the release of information that would lead to the discovery of the identity or whereabouts of the biological parents. *Id.*
>
> In 1985 the legislature again provided for further disclosure of information in adoption records if DHS obtained consent from the biological parents. 1985 Tennessee Public Acts, Chapter 285; T.C.A. § 36-1-141.
>
> Since 1985 the legislature has twice more amended the statute. T.C.A. § 36-1-141 (1989). The law provided that upon written request of an adopted person over the age of twenty-one (21), DHS shall search sealed adoption records in its possession for information concerning the location of the adopted person's biological parent(s). *Id.* If DHS located the biological parent(s), DNS was to notify the parent(s) of the adopted person's request; and, if the parent(s) objected, then no information in the adoption record was to be disclosed. *Id.* If the biological parent(s), or either of them, consented, the department of human services was to provide the adopted person with the name, address, and identifying information of the biological parent(s). *Id.* If the biological parent(s) could not be located, the adopted person was to provide the office of vital records with the correspondence from the DHS and obtain a copy of their birth certificate. *Id.*

***Doe v. Sundquist***, 1997 WL 354786, at \*3 (Tenn. Cir. Ct. 1997). With the history of the statutory law as well as of this case delineated above, we turn to a discussion of the issues on appeal.

## I. TENNESSEE CONSTITUTIONAL
## PROTECTION AGAINST RETROSPECTIVE LAWS

Plaintiff's contend that the retroactive provisions of the Act deprive them of their rights as guaranteed by the Tennessee Constitution, specifically Article I, § 20 which provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." For purposes of this constitutional provision, the term "retrospective laws" has been defined by the Tennessee Supreme Court as those laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." ***Morris v. Gross***, 572 S.W.2d 902, 907 (Tenn. 1978); *see also **Owens v. Truckstops of Am.***, 915 S.W.2d 420, 427 (Tenn. 1996). Plaintiffs argue that the Act takes away or impairs a vested right in "the confidentiality of the identifying information in adoption files" acquired under existing laws. We agree.

## A.
## TENNESSEE LAW RELATING TO ARTICLE 1, § 20

Despite the fact that Tennessee courts, through the years, have often addressed issues of retrospective laws and vested rights, no case has articulated a clear test for discerning when a retrospective law impairs a vested right or for that matter when a right is vested. An evaluation of the case law reveals that, in discussing this issue, many courts have distinguished between the procedural or remedial and the substantive nature of the law. One supreme court case clarified how this determination relates to the ultimate issue of a retroactive law's unconstitutionality as follows:

> remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes.

*Dowlen v. Fitch*, 264 S.W.2d 824, 826 (Tenn. 1954) (citing American Jurisprudence at Section 482). Thus *Dowlen* takes the position that remedial laws are not, legally speaking, "retrospective" laws and, therefore, the constitutional prohibition does not apply. Other cases have taken this principle one step further suggesting that when applied retroactively, a substantive statute by its very nature will impair vested rights: "If [a statute] is 'substantive,' it is not applied retro-actively because to do so would 'disturb a vested right or contractual obligation.'" *Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994) (quoting *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976) ("The usual test of the 'substantive' or 'procedural' character of a statute for this purpose is to determine whether or not application of the new or amended law would disturb a vested right or contractual obligation.")).

Under the rationale of the preceding cases, the only question that a court need ask is whether the statute is substantive or procedural. We are persuaded that such an inquiry begs the ultimate question of whether the retroactive application of a law will "take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Morris*, 572 S.W.2d at 907; *Owens*, 915 S.W.2d at 427. Our position finds support in certain Tennessee cases which have acknowledged that the substantive/procedural distinction is not the definitive factor. In *Henderson v. Ford*, the supreme court referred to an earlier case where "the Court was careful to point out that even a statute whose primary purpose was procedural could not be applied so as to impair a contractual obligation or disturb a vested right." *Henderson v. Ford*, 488 S.W.2d 720, 721 (Tenn. 1972) (citing *National Life & Accident Ins. Co. v. Atwood*, 29 Tenn. App. 141, 194 S.W.2d 350, (1946)); *see also Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993) (affirming "the principle that retrospective application of a remedial or procedural statute is constitutionally forbidden if it takes away a vested right or impairs contractual obligations" and finding that the retrospective application of the law at issue, a remedial law, would impair accrued contract rights). In *Henderson*, the court resolved the ultimate issue to be "in essence, whether the application of the . . . amendment [at issue there] to the defendant-in-error would impair any such right

vested in him at the time of the enactment of the amendment." *Henderson*, 488 S.W.2d at 722.

Accordingly, we find that the ultimate issue in the case at bar is whether or not this new law, when applied retroactively, impairs vested rights. We receive guidance from other Tennessee cases which have approached the Article 1, § 20 issue by asking this question. In *Miller v. Sohns*, 464 S.W.2d 824, 825 (Tenn. 1971), the court addressed the issue of whether the Uniform Contribution Among Tort Feasors Act could be applied retroactively. There, the plaintiff filed a suit against three defendants following an automobile accident. He subsequently entered into a covenant not to sue with two of these defendants in exchange for their payment to him of $5000. The remaining defendant sought to reduce the judgment against him by $5000 pursuant to the Uniform Act which was enacted after the accident. The court found that, at the time of the occurrence of the accident, when the substantive rights of the plaintiff accrued "one of these rights was for a consideration, to make a covenant not to sue, without the amount paid by the alleged joint tort-feasor reducing the amount he might recover in a subsequent suit." *Id.* at 826. In so holding the court stated that "the test of impairment is whether the right in full existing at the time of its accrual would be diminished by application of the statute." *Id.*

Another "test of the impairment" employed by our supreme court was to ask whether the retroactive legislation "deprives a person of his reasonable expectations under prior law." *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 696 (Tenn. 1974). In *Moulton*, the issue was whether it was constitutionally permissible to apply an amended statute of limitations which had the effect of reviving an otherwise barred cause of action. Adopting the court of appeals' analysis but not its conclusion, the supreme court held that "[t]he statute had run under the prior law prior to the amendment; and, therefore, petitioners had a right to 'expect' under the prior law they would not be sued; but, if sued, they were assured of a perfect defense." *Id.* at 697; *see also Buckner v. GAF Corp.*, 495 F. Supp. 351, 356 (E.D. Tenn. 1979) (in holding that the defendants obtained a vested right in their statute of limitations defense and thus that the asbestos exception to the statute could not revive plaintiff's claim, the court stated that the Tennessee Supreme Court "has not retreated from its holding that: ' . . .

retroactive legislation is unconstitutional 'only when it deprives a person of his reasonable expectations under the prior law.' ' "). Yet another case sheds some light on the determination by defining "vested rights" as follows: "The words (vested rights) are used as implying interests which it is proper for the state to recognize and protect and of which the individual could not be deprived arbitrarily without injustice." *Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn.1978)(quoting 16 Am.Jur.2d Constitutional Law § 421 (1964)).

In presenting the cases as we have, we do not intend to indicate that there is no relationship between the substantive/procedural question and the vested right question. Quite the contrary, whether a statute is substantive or procedural can depend upon whether or not its retroactive application impairs a vested right. The case of *Brewer v. Aetna Life Ins. Co.*, 490 S.W.2d 506, 510 (Tenn.1973), is illustrative of the interplay between these two issues. There, the court considered the retroactive application of a statute which "create[d]" a rebuttable presumption that a fireman who dies of a disease of the lungs, hypertension or heart disease, did so in the line of duty, and in the course and scope of his employment." In concluding that the statute did not impair a vested right, the court noted the remedial nature of the law and quoted the United States Supreme Court as follows: "It must be evident that the right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens . . . " *Id.* at 511 (quoting *Marx v. Hanthorn*, 148 U.S. 172 (1893)).

B.

RETROACTIVE APPLICATION
OF TENNESSEE CODE ANNOTATED SECTION 36-1-127(c)

First of all, we reiterate that this case is before the court of appeals on a Rule 12.02(6) dismissal which restricts our review to the sufficiency of the complaint alone and which mandates that we construe said complaint liberally taking all allegations of fact as true. Regarding the plaintiffs in this action, the complaint alleges that the plaintiff Promise Doe is a birth parent who surrendered her child for adoption in Tennessee in 1990 at which time she was assured that

the information would remain confidential and sealed. The complaint alleges that "the emotional trauma and personal sacrifice" of Promise Doe "was attenuated in part only by the promise as set forth in the then existing adoption law that the details surrounding her decision would remain confidential for the rest of her life." Plaintiff Jane Roe is also a birth mother who surrendered her child for adoption at the age of seventeen in 1956--she alleges that it is essential that her identity and her personal circumstances at the time of the birth of her first child remain confidential. Plaintiffs Kimberly C. and Russ C. are adoptive parents of two children whom they adopted under the prior law. They claim that they were required to divulge detailed information of a private nature to the adoption agency which is now a part of the adoption records. Thus, from the complaint, it is clear that the information at issue in this case concerns some of the most private and intimate details of a person's life. It is not the sort of information that people casually make public, and, in fact, it involves matters that persons have historically gone to great lengths to keep private.

The final plaintiff, Small World Ministries, Inc., is a non-profit ministry licensed by the State of Tennessee as a child-placing agency. In order to maintain its licence, Small World has to abide by certain standards promulgated by the State Department of Human Services. One such regulation, Chapter 1240-4-9.05, Standards for Child-Placing Agencies, mandates that Small World provide birth parents with:

> A clear definition of the confidential aspects of the services provided for them and their child and of the opportunity available to them at any time to waive their right of privacy if their child, upon reaching the age of maturity, wishes to know more about them or to see them.

This regulation was adopted November 3, 1988 and since that time, Small World has routinely advised birth parents of their state-recognized right to confidentiality.

Initially, we reject the following assertion made by Defendants: "The new legislation has not changed any right of the plaintiffs or abolished any remedy available to them. Rather, the new statute has simply changed the method for obtaining such information to be easier and less costly for adoptees." For over forty years, the identity of an adoptee's birth parents has been available to that

adoptee in only two circumstances: first, after a court's determination that it was in the best interest of the adopted person or the public and, more recently, with consent of the birth parent(s). While non-identifying information has been more readily available in recent years, the law has protected the identity of the parents except in these "best interest" or "consent" circumstances. Under the new law, all of the adoption record including the birth parents' identity is available to the adoptee regardless of a best interest determination and regardless of the birth parents' consent. This is a material change.[5]

In *Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514 (Tenn. 1958), our supreme court defined "substantive law" as "that part of the law which creates, defines, and regulates rights; that which creates duties, rights and obligations; the law which relates to rights and duties which give rise to a cause of action. "Procedure," on the other hand, has been described by the court as follows:

> '[T]he mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer--the machinery, as distinguished from its product; . . . including pleading, Process, evidence, and practice . . .. Practice [is] the form . . . for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong. . . .'

*Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn.1976)(quoting *Jones v. Garrett*, 386 P.2d 194, 198-99 (Kan.1963)). The provision of the new adoption law at issue creates and defines a right of adopted persons which has not previously existed--that is a right to unqualified access to the identity of their birth parents. As such, Section 36-1-127(c) of the Tennessee Code is a substantive change in the law and not merely a procedural or remedial one.

The case of *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125

---

[5]We note that the fact that the General Assembly can change the law does not undermine the legitimacy of a person's reliance on official promises of confidentiality or the creation or existence of a vested right deserving of constitutional protection. In fact, since legislation is generally presumed to be prospective, *see Woods v. TRW, Inc.,* 557 S.W.2d 274, 276 (Tenn. 1977); *Henderson v. Lutche*, 938 S.W.2d 428, 430 (Tenn. Ct. App. 1996), persons could reasonably conclude that subsequent legislative changes would have only prospective effect. That is exactly what Tennessee Constitution article I, § 20 is all about.

(Tenn. Ct. App. 1975), is analogous. That case involved an inverse condemnation law which, in pre-amendment form, entitled land owners "to recover in damages the value of the land or right taken, no more and no less." *Id.* at 128. As amended, the law provided that the owner recover "for greater and a new and different measure of damages than was previously allowed, viz., attorney fees etc." *Id.* The court held that the Amendment "is one that does not merely enlarge or affect a procedure for the enforcement of an existing right, but on the contrary, creates a new right of recovery theretofore nonexistent." *Id.* In the same manner, we find that Section 36-1-127(c) does not merely enlarge or affect a procedure for an adoptee's procurement of his or her birth parents' identity. Rather, this law creates a new right to this information which has heretofore been nonexistent.

Though, under certain Tennessee cases, the substantive nature of the law would suffice to support a conclusion that the law's retrospective application violates Article 1, § 20, we hold that the ultimate issue is whether the retroactive application of this law will impair the rights vested in Plaintiffs. To reiterate, vested rights have been defined as those "interests which it is proper for the state to recognize and protect and of which the individual could not be deprived arbitrarily without injustice." *See Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn.1978). Additionally, our supreme court has focussed on whether the retroactive legislation deprived a person of his reasonable expectations under the prior law. *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 696 (Tenn.1974).

Applying these standards to the case at bar, we find that the retrospective application of Section 36-1-127(c) does impair the vested rights of birth parents who surrendered their children for adoption under former law. Under the prior law, these birth parents had a reasonable expectation that any identifying information would remain confidential if they so desired.[6] While the DHS

---

[6]In analyzing the issue of retrospective legislating, the lower court adopted the three-prong approach found in *Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6, 15 (Colo.1993):

> [I]n determining whether a retroactive statute impairs or destroys vested rights the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bonafide intentions or *reasonable expectations* of effected persons, and (3) whether the statute surprises persons who have long relied on a contrary state

regulation mandating that birth parents be assured of the confidential aspects of the adoption-related services was merely a state regulation and only adopted in 1988, it is indicative of the expectation of confidentiality prevalent under the prior law. The birth mother plaintiffs all proclaim that they were assured confidentiality and expected the same under that law. We find that this interest in the confidentiality of identifying information is a proper interest for the state to recognize and protect. Life-changing decisions were made based upon this expectation and to now deprive those who relied upon their legitimate expectation under the law would be to deprive them of a vested right.

It is significant, as the complaint alleges, that Plaintiffs did not voluntarily release this information to the government but rather were required to do so as a condition to being able to use the adoption machinery exclusively available from the state. In return for providing this information, these persons were assured that their privacy would be protected by keeping their information confidential except in the narrow, statutorily defined circumstances. The effect of the challenged statutes is, for all practical purposes, to remove any restriction on access to the heretofore confidential information.

We find that the parties challenging the statutes have presented compelling evidence depicting their reliance on the statute's confidentiality provisions and the significant effects that retroactively changing the rules would bring about. Constitutional analysis frequently requires courts to weigh competing rights and interests, but in the context of Tennessee Constitution article I, § 20, the balance is always struck in favor of vested rights.

We note that our ruling does not extend to all information contained in adoption records as only the identifying information of birth parents has been consistently protected throughout the years. Therefore, our holding with regard to Article 1, § 20 does not encompass the adoptive parent plaintiffs. Their redress is through the legislative process.

---

of the law.
*See Doe v. Sundquist*, 1997 WL 354786, at *9. Though we do not adopt the Colorado standard as our own, we note that numbers two and three embrace the same concern as our *reasonable* expectations inquiry. Where we disagree is with the lower court's conclusion that there was no such expectation.

Plaintiffs present and the court below addresses issues of Right of Privacy, Equal Protection and Freedom of Conscience. Since the foregoing issue of Retrospective Legislation is determinative we do not address those issues here.

It should be noted that the trial court's memorandum opinion cited certain affidavits as a basis for its disposition of the case. This would indicate that the dismissal below was summary judgment, Tenn. R. Civ. P. 56, instead of Rule 12.02(6) grounds. Nevertheless, our result would be the same under either review.

The judgment of the trial court is therefore reversed, and the cause is remanded to the trial court for further proceedings.

_____

                                  WALTER W. BUSSART,  SPECIAL JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE