CABOODLES COSMETICS, LIMITED PARTNERSHIP, a Nevada limited partnership, and HHS, Limited Partnership, a Nevada limited partnership, Plaintiffs,

v.

CABOODLES, LLC, a Delaware limited liability company, and Glimpso, LLC, Defendants.

No. 05–2179 D/P.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 3, 2006.

Douglas A. Black, Robert L. Crawford, Wyatt Tarrant & Combs, Memphis, TN, for Plaintiffs.

Michael C. Patton, Antonio L. Matthews, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART COUNTER–DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS

DONALD, District Judge.

Before the Court is the motion (dkt. #15) of Peter Henning ("Henning" or "Counter–Defendant") to dismiss the complaint of Caboodles, LLC of Tennessee ("Caboodles Tennessee" "Buyer" or "Counter–Plaintiff") pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Caboodles, LLC alleges that Henning in his personal capacity 1) breached the warranty set forth in the Asset Purchase Agreement between Caboodles, LLC and Caboodles Cosmetics, LP of Nevada ("Caboodles Nevada" or "Seller"); 2) fraudulently induced the Buyer to enter into the Asset Purchase Agreement ("purchasing agreement") with Seller; 3) fraudulently misrepresented false financial information to Buyer; 4) negligently misrepresented the financial condition of Seller inducing Buyer to enter into the purchasing agreement; 5) conspired with Andrew Mann ("Mann"), Seller's Chief Financial Officer, and Seller to conceal the alleged misconduct; and 6) aided and abetted Seller in its concealment. Henning moves to dismiss the allegations for lack of personal jurisdiction and asserts that he is not subject to Tennessee's long-arm statute. In addition, he asserts that Buyer fails to state claims upon which relief may be granted as to Buyer's allegations of fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conspiracy, aiding and abetting, and punitive damages. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332 and 28 U.S.C. § 1367. For the following reasons, the Court grants in part and denies in part Henning's motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Caboodles Nevada is a successor of Plano Molding Company ("Plano"). Plano originally manufactured plastic boxes utilizing injection mold technology for outdoor products, tackle boxes, and storage systems. Def.'s Answer and Countercl. ¶ 11. At some point, Plano began to manufacture plastic boxes that could be utilized as cosmetic cases under the trade name "Caboodles." Id. Caboodles Nevada was subsequently formed to manufacture, design, market, distribute and sell the cosmetic cases. Id. Plano then assigned the trademark "Caboodles" and other intellectual property to HHS, LP ("HHS"). Id. Caboodles Nevada and HHS are both limited partnerships organized and existing under the laws of Nevada with a principal place of business located in Plano, Illinois. Def.'s Answer and Countercl. ¶ 10. Henning, President of Plano, owns the controlling interest in Plano, Caboodles Nevada, and HHS. Id. In November 2003, he served as manager for both Caboodles Ne-

vada and HHS. Def.'s Answer and Countercl. ¶¶ 10–11. Henning is a resident of Illinois. Def.'s Answer and Countercl. ¶ 10.

After failing to successfully manufacture, design, market, distribute, and sell the cosmetic cases, Caboodles Nevada negotiated with Pittco Capital Partners, LP ("Pittco") for the sale of its assets. Def's Answer and Countercl. ¶¶ 11–12. As a result of the negotiations, Pittco formed Caboodles Tennessee and served as its equity investor. Def's Answer and Counterclaim ¶ 12.

On November 21, 2003, Plaintiffs Caboodles Nevada and HHS (collectively "Plaintiffs") entered into a purchasing agreement that included, *inter alia,* a license agreement with Defendants Caboodles Tennessee and Glimpso, LLC ("Glimpso") (collectively "Defendants"). Compl. ¶ 2. At this time, Plaintiffs transferred assets that included "all items of inventory" to Defendants. *Id.* In consideration for this transfer, Caboodles Tennessee executed and delivered a promissory note and escrow agreement to Plaintiffs for $1,477,682.00 due and payable on November 21, 2004. Compl. ¶ 3. The agreement provided that Plaintiffs were to transfer inventory to Caboodles Tennessee. *Id.* In exchange for the promissory note, Caboodles Tennessee agreed to sell the inventory. *Id.* The parties dispute whether Buyer was obligated to deposit the sale proceeds in escrow as security for its payment. *Id.* Caboodles Tennessee sold inventory and acquired sale proceeds totaling $1,256,850.12. *Id.* Caboodles Tennessee did not deposit any of the proceeds from the sale of inventory into the escrow account. *Id.*

After closing on November 21, Caboodles Tennessee discovered numerous discrepancies in Seller's financial records and received claims for unpaid accounts. Def's Answer and Countercl. ¶ 14. Caboodles Tennessee received inquiries for accounts payable that were not posted to Seller's accounts payable ledger. *Id.* Monthly booking commissions owed to sales agents for sales made prior to the closing were delayed and not booked until after the closing date. *Id.* Caboodles Tennessee received claims for returns from customers who intended to return the goods prior to the closing. *Id.* These claims were not booked in the general ledger or the financial system nor were they disclosed to Buyer before November 21. Def.'s Answer and Countercl. ¶ 15. In addition, an account payable to PBB, a warehouse facility that stored Caboodles Nevada inventory, accumulated storage charges dating back to 2002. *Id.* In sum, Caboodles Tennessee alleges that it has had to expend in total $1,275,247.31 for open payables prior to closing, commissions payable for sales prior to closing, chargebacks related to inventory buybacks, disposal fees for obsolete inventory, product settlements, and inventory returns which were not on the schedules as assumed liabilities. Def.'s Answer and Countercl. ¶¶ 15–16. It has also been unable to collect $1,214,935.34 on accounts receivable. Def's Answer and Countercl. ¶ 19.

Pursuant to the purchasing agreement, Plaintiffs agreed to indemnify Buyer for "any inaccuracy or misrepresentation in or breach of any representation or warranty made by Seller." Def.'s Answer and Countercl. ¶ 17. Plaintiffs and Buyer met in Memphis, Tennessee on October 11, 2004, to discuss Buyer's claim for indemnity. *Id.* Buyer submitted a written claim on March 9, 2005. *Id.* On March 18, 2005, Plaintiffs rejected the claim. *Id.* Caboodles Tennessee alleges that it has incurred damages in the amount of $3,707,295.53 and is entitled to a set off of $1,370,933.39. Def.'s Answer and Countercl. ¶ 18. Further, Caboodles Tennessee alleges that it is entitled to recover $2,336,295.53 from

Caboodles Nevada as its indemnity claim. *Id.*

As a result of the inaccurate financial information, Caboodles Tennessee alleges total damages of at least $12,311,706.87 including its initial purchase of Caboodles Nevada and its additional capital needs. Def's Answer and Countercl. ¶ 20.

On March 8, 2005 Plaintiffs filed the original complaint alleging a claim for relief under the Lanham Act 15 U.S.C. §§ 1051 *et. seq.* On March 30, 2005 Buyer filed its answer and counterclaim against Plaintiffs, Mann, and Henning. Henning filed the instant motion to dismiss on May 31, 2005. Buyer filed its response on July 18, 2005. For the foregoing reasons, the Court denies in part and grants in part Counter–Defendant's motion to dismiss.

## II. 12(b)(2) STANDARD

█ Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002)). A prima facie showing of jurisdiction may be established based upon the plaintiff's pleadings and affidavits. *Bridgeport Music, Inc. v. Agarita Music, Inc.,* 182 F.Supp.2d 653, 657 (M.D.Tenn.2002).

## III. ANALYSIS

Henning argues that he acted in his capacity as an officer for Seller and that insufficient contacts exist within the forum state to allow the Court to exercise personal jurisdiction over him. When analyzing whether a court has personal jurisdiction over a defendant, it is "well-settled" that the court applies the jurisdictional law of the forum state. *Poyner v. Erma Werke GmbH,* 618 F.2d 1186, 1187 (6th Cir.1980). Accordingly, the Court looks to Tennessee state law to determine if the Court has personal jurisdiction Henning. The Tennessee long arm statute reads:

(a) Persons who are nonresidents of Tennessee ... and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: ... (1) The transaction of any business within the state; (2) Any tortious act or omission within this state; ... (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting.

Tenn.Code Ann. § 20–2–214(a)(1)(2)(4) (2005). Although this statute reaches broadly, it must be applied in a manner that comports with the Due Process Clause of the Fourteenth Amendment. *Id.; Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994), cert. denied, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994); *Procter & Gamble Cellulose Co. v. Viskoza-Loznica,* 33 F.Supp.2d 644, 660 (W.D.Tenn.1998).

Before a defendant can be subjected to *in personam* jurisdiction, due process requires a defendant to have had "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Poyner,* 618 F.2d at 1190 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Particularly relevant to this case, the Tennessee Supreme Court has held that "the physical presence of the defendant or its agent is 'not necessary' for the

transaction of business to serve as a minimum contact." *Nicholstone Book Bindery, Inc. v. Chelsea House Publ'ers*, 621 S.W.2d 560, 563 (1981) (citing *S. Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 382 (6th Cir.1968). However, even contacts based on a single act outside the forum state must satisfy the following criteria, 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine*, 401 F.2d at 381.

The Tennessee Supreme Court found that even a third-party defendant that had no physical contact with Tennessee and no financial interest in the original transaction could be subjected to personal jurisdiction in the State's courts. *See Masada Investment Corp.*, 697 S.W.2d 332 (Tenn. 1985). In *Masada*, a real estate broker procured the services of defendant, as an experienced real estate attorney, in preparing a warranty deed and an agreement of sale and purchase for a real estate transaction. *Id.* at 333. The warranty deed included a preliminary title insurance binder that attached the wrong legal description of the property even though defendant had been notified of the discrepancy. *Id.* The description also erroneously included an adjacent lot. *Id.* Defendant, a resident of Texas, mailed the deed and agreement of sale and purchase to the plaintiffs in Tennessee and the closing took place in the defendant's office in Texas. *Id.* Even though the defendant submitted the correct legal description a few days after the documents were executed by a party to the sale, it was discovered after the closing that the adjacent lot had been conveyed instead of the original property. *Id.*

The Court found that it had jurisdiction because 1) the defendant made a purposeful choice to negotiate with one of the parties to the sale over the phone, draft documents in accord with Tennessee law, send the documents to Tennessee for execution, and hold the closing of sale in his office, 2) the legal work controlled the sale of several million dollars of Tennessee realty sold by a Tennessee limited partnership, and 3) because he willfully and knowingly chose to prepare legal documents filed in Tennessee, his negligent actions resulted in an injury in the state. *Id.* at 335 Accordingly, the Court held that exercising personal jurisdiction over the Texas defendant was proper. *Id.*

The facts of the instant case do not turn on the outerlimits of *in personam* jurisdiction posed by *Masada*, but they highlight the same principal. Henning, as controlling interest owner in both Caboodles Nevada and HHS, made a purposeful choice to enter into a business relationship with Buyer, a limited liability company formed under Tennessee law. Henning signed multiple contracts to that end, including the purchasing agreement and a certificate as to representations and warranties. Counter–Pl.'s Resp. to Counter–Def.'s Mot. to Dismiss ¶ 3. The business relationship was mutually beneficial to both Henning and Buyer, and the relationship was based on a licensing agreement and a transaction over a million dollars based on written affirmations signed by Henning. From the contract alone, it was foreseeable that economic consequences would arise in Tennessee out of the business transaction.

Traditional notions of fair play and substantial justice are not offended by requiring Henning to defend a claim in Tennessee. Tennessee has a substantial interest

in protecting the contracts upon which its citizens rely, especially when the contract has a significant impact on the commerce of the State. *Southern Machine,* 401 F.2d at 383. Under *Masada,* the Court finds these contacts sufficient for the Court constitutionally to exercise personal jurisdiction over Henning.

## IV. 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when no set of facts exists which would entitle the plaintiff to recover. *Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir.1989). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Res.,* 902 F.2d 474, 475 (6th Cir.1990), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991).

A district court may not grant a defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.,* 123 F.3d 394 (6th Cir.1997), *cert. denied, Murphy v. Sofamor Danek Group,* 523 U.S. 1106, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). A court will not consider any disputed questions of fact at this stage. *Barnes v. Winchell,* 105 F.3d 1111, 1114 (6th Cir.1997). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond,* 866 F.2d at 175. The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis,* 135 F.3d at 405 (6th Cir.1998). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## V. ANALYSIS

### A. FRAUD

■ Henning argues that Buyer's allegations of fraudulent misrepresentation and inducement fail because the claims were not pleaded with particularity and at no time did he make any false statements in his personal capacity. Counter–Def.'s Mot. to Dismiss ¶ 6. Under Tennessee law,

to establish a claim for fraud, the plaintiff must show:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity— that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn.Ct.App.1998) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn.Ct.App.1990)). The Federal Rules of Civil Procedure require a plaintiff to plead fraud with particularity. Fed. R.Civ.P. 9(b). The particularity requirement has been interpreted to mean that a plaintiff must allege at a minimum "the time, place, and content of the alleged misrepresentation . . .; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir.1993). Moreover, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 322 (6th Cir.1999) (citing *Coffey*, 2 F.3d at 162).

■ In ruling upon a motion to dismiss pursuant to Rule 9(b), a court must consider the policy of simplicity in pleading embodied in Rule 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988). Rule 8 requires the plaintiff to provide a "short and plain statement of the claim" and "simple, concise, and direct" allegations. Fed.R.Civ.P. 8. The principal purpose for the Rule 9(b) particularity requirement, when considered in context with Fed.R.Civ.P. 8, is to ensure that the defendant receives fair notice of the alleged misconduct or fraudulent acts of which the plaintiff complains in order to prepare a responsive pleading. *Michaels Bldg. Co.*, 848 F.2d at 679. Moreover, an exception to the Rule 9(b) particularity requirement exists when the relevant facts "lie exclusively within the knowledge and control of the opposing party." *Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055, 1061 (S.D.Ohio 1995). In such a case, pleading upon information and belief is permissible. A court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted. *Michaels Bldg. Co.*, 848 F.2d at 680. The plaintiff, however, must still plead a statement of facts upon which the belief is based. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990).

Buyer's allegations of fraud comport with both Rule 9(b) and the liberal standard set forth by Rule 12(b)6 and thus, overcome Henning's motion dismiss. In its counterclaim, Buyer presents a dated list of almost one hundred accounts that became due prior to the November 21 closing and the corresponding amounts that were not paid by Seller. Def.'s Answer and Countercl., Ex. 1. These accounts payable were never posted to Seller's ledgers, and were not discovered by Buyer until after the purchasing agreement. Def.'s Answer and Countercl. ¶¶ 18–19. Buyer also lists by the month, returned inventory that it alleges Henning was aware would be returned prior to closing, but failed to disclose this information to Buyer. Def.'s Answer and Countercl.

¶¶ 14–15, Ex. 2. In addition, Buyer presents a schedule of twenty-five pages of individual commissions owed to sales agents for the months of September, October, and November. Def.'s Answer and Counterclaim, Ex. 2. In his defense, Henning contends that invoices incurred or dated between September 30, 2003 and November 21, 2001 "were anticipated and specifically excluded from Seller's warranty ..." Counter–Def.'s Mot. to Dismiss ¶ 7.

Even though the invoices were excluded from the warranty, it does not explain why they were not paid and were not included on Seller's ledgers. The accumulation of these unpaid accounts lead to a material misrepresentation that Seller's operations were run in accordance with generally accepted accounting procedures. Def.'s Resp. to Counter–Def.'s Motion to Dismiss, Appdx. A ¶ 16. Seller warranted that "there are no [l]iabilities of Caboodles [Seller] ... other than ... [l]iabilities incurred since the date of the 2003 Balance Sheet that have been incurred in the ordinary course business of [Seller] and that do not, and will not, individually or in the aggregate, have a[m]aterial [a]dverse [e]ffect." *Id.* However, Buyer had to expend $1,275,247.31 to pay outstanding September, October and November accounts. Def.'s Answer and Countercl. ¶ 16. A material adverse effect results given that this amount is roughly $200,000.00 less than the original $1,477,682.00 promissory note. It is reasonable that Buyer relied on Seller to update its operations prior to November 21 and would not have purchased Seller's assets otherwise. As manager and general partner of Seller, Henning's acts of omission can be construed as knowing and intentional because he neglected Seller's finances for three months and in such a manner that he would acquire a larger share of profits and shift the expense to Buyer. Accordingly, due to Henning's failure maintain Seller's finances in the ordinary course of business and his failure to apprise Buyer of this in the purchasing agreement, Counter–Defendant's motion to dismiss as to Counter–Plaintiff's claim of fraud is **DENIED.**

## B. NEGLIGENT MISREPRESENTATION

■ Henning also argues that Buyer's claim for negligent misrepresentation should be dismissed because Buyer failed to allege any misrepresentations specifically made by him. Tennessee has adopted the Restatement of Torts' definition of negligent misrepresentation. Restatement (Second) of Torts § 552. *Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn.1997). Pursuant to this definition, the plaintiff can recover by establishing that:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information meant to guide others in their business transactions; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Id.* (internal quotations omitted) (emphasis omitted). Henning acted in the course of his employment as manager for Seller during the months of September, October, and November. At this time, Seller neglected to pay its accounts payable and include all of its existing accounts on the ledgers purchased by Buyer. This was so, even though Henning warranted to Buyer that it would not incur any material liabilities during this time period. It was reasonable on behalf of Buyer to expect that Seller would continue to maintain its finances until the November 21 closing, and Buyer

880

was justified in relying on Henning to manage Seller's overall financial condition. Pursuant to the purchasing agreement, Seller's material liabilities should have been communicated to Buyer. As a result, Counter–Defendant's motion to dismiss as to Counter–Plaintiff's negligent misrepresentation claim is **DENIED**.

### D. CONSPIRACY

 Since Buyer's claims of fraudulent inducement and fraudulent misrepresentation survive Henning's motion to dismiss, the allegations serve as underlying conduct for Buyer's claim for conspiracy. Tennessee courts define a civil conspiracy as "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 353 (1948). Under Tennessee law, to prove a conspiracy to defraud, the plaintiff must establish:

> a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has the purpose. The agreement need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy.

*Id.* (internal quotations and citations omitted). "Because the agreement does not need to be a formal one, plaintiffs can prove the existence of a conspiracy through circumstantial evidence, including inferences from the relationships among the parties." *Id.* If the plaintiff succeeds in proving a conspiracy, "each conspirator is liable for all damages caused by the actions of any of his co-conspirators in carrying out their common design." *Id.* at 354.

Henning argues that he signed the purchasing agreement in his capacity as an employee for Seller, as a result, the Court must examine whether he is subject to intracorporate immunity. Under the principles of agency theory, the identities of agent and principal merge when the agent acts for the entity, "that one may not be an accessory of the other." *Trau–Med of Amer. v. Allstate Insurance Co.,* 71 S.W.3d 691, 703 (Tenn.2002) (citations omitted). Agent and principal are one entity, "as long as the agent is acting within the scope of his or her authority." *Id.* at 704. As manager of Seller, it would have been Henning's responsibility to oversee its financial operations. The considerable amount of Seller's nonfeasance substantiates Buyer's allegations that Henning acted outside of the scope of his authority to conceal Seller's finances with Mann and other employees of Buyer. Counter–Pl.'s Resp. to Counter–Def.'s Mot. to Dismiss ¶ 25. Henning also stood to gain in his individual capacity as general partner when the company was sold to Buyer. Accordingly, Henning motion to dismiss Buyer's civil conspiracy allegations is **DENIED**.

### E. AIDING AND ABETTING

 Buyer alleges that Henning aided and abetted in the commission of fraud. Tennessee follows the Restatement of Torts' theory of aiding and abetting that imposes liability for harm resulting to a third person from the tortious conduct of another. *See* Restatement (Second) Torts § 876; *Cecil v. Hardin,* 575 S.W.2d 268, 272 (Tenn.1978). A plaintiff must show that 1) the defendant knew that his co-defendant's conduct constituted a breach of duty, and 2) that he gave substantial assistance or encouragement to them in their acts. Restatement (Second) Torts § 876(b). Where a civil conspiracy "involves an agreement to participate in wrongful activity," aiding and abetting focuses on whether a defendant knowingly

gave "substantial assistance" to someone who performed wrongful conduct. *State v. Ridenhour*, 248 Kan. 919, 937, 811 P.2d 1220 (Kan.1991). Buyer fails to plead a legally cognizable claim of aiding and abetting because the purchasing agreement between Buyer and Seller comprised an arm's length transaction. Seller had no duty to Buyer other than the statements warranted in the purchasing agreement. As a result, Henning cannot be held liable for aiding abetting Seller's actions due to the nature of relationship between the transacting parties. Accordingly, his motion to dismiss is **GRANTED.**

### F. PUNITIVE DAMAGES

Henning contests Buyer's claim for punitive damages because it is "alleged as an independent cause of action." Counter–Def.'s Mot. to Dismiss ¶ 10. However under Tennessee law, punitive damages may be awarded only if a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992). Since Buyer has sufficiently pled an underlying cause of action for fraud, Henning's motion to dismiss as to punitive damages is **DENIED.**

### VI. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Henning's motion to dismiss Buyer's aiding and abetting claim. The Court **DENIES** Henning's motion to dismiss Buyer's claims for fraud, negligent misrepresentation, conspiracy, and punitive damages.

**IT IS SO ORDERED** this 3rd day of February 2006.